Price, Appellant, *v.* Smith.

Argued January 11, 1965. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*James C. Lanshe,* for appellants.

*James N. Diefenderfer,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, March 16, 1965:

On January 31, 1963, Walter W. Price and Walter M. Price, plaintiffs in this case, purchased for $5,000 a certain piece of land in Lehigh County for the purpose of operating a truck rental agency and a used auto part business which would necessitate storing thereon used automobiles from which parts could be removed and sold. The land, except for 40-60 feet, was located in Hanover Township. At the time of the purchase, an ordinance (hereinafter referred to as Ordinance No. 7) of the township provided for "regulating junk dealers and the establishment and mainte-

nance of junk yards and scrap yards, including, but not limited to, automobile junk or grave yards; providing for permits for engaging in business as a junk dealer and for operating, establishing and maintaining of junk yards."

On February 4, 1963, the plaintiffs applied, under that ordinance, for a permit to conduct a so-called auto graveyard on the premises. Then on February 16, 1963, they applied for a building permit to erect on the same premises a temporary structure for conducting their truck rental agency. The building permit was immediately allowed. Then, on March 7, 1963, the township board of supervisors rejected the plaintiffs' application, under Ordinance No. 7, for the operation of a junk yard, and, contemporaneously, revoked the building permit already granted. The reasons given by the township for these decisions was that the plaintiffs were preparing to engage in a business which would be inimical to the provisions of a new zoning ordinance which was in the process of enactment and which eventually was enacted on May 6, 1963.

The plaintiffs filed a mandamus action in the Court of Common Pleas of Lehigh County to compel the township to issue the applied-for permits. They also filed an action in equity seeking to have Ordinance No. 7 declared unconstitutional and its application restrained. The Court upheld the constitutionality of Ordinance No. 7, the refusal of the issuance of a permit thereunder, and the revocation of the building permit. The plaintiffs appealed in both cases, the appeals being consolidated here for argument and disposition.

We affirm that portion of the lower court's holding in both cases that Ordinance No. 7 was a valid and constitutional exercise of police power, that it was a proper regulatory measure, bearing a reasonable relationship to the protection of the health, safety, morals

and general welfare of the public, and that it was not discriminatory or arbitrary, nor were the standards therein set forth so vague and indefinite that uniform application could not be assured. We also affirm the decision of the court below that the refusal of a permit under Ordinance No. 7 was not an abuse of the board's discretion and that the plaintiffs may not, therefore, compel the issuance of a permit allowing them to maintain on their premises a junkyard.

We reverse, however, that portion of the court's holding that the revocation of the building permit already granted was proper. This is not a case where a property owner is seeking to rely on the building permit to enable him to violate the terms of a zoning ordinance enacted after the issuance of the permit and prior to the property owner's full adaptation of the property to the use for which the permit was issued. Whether or not the property owner can, in such a case, continue on with the intended use which has now become violative of the new zoning ordinance, depends on whether he has made substantial expenditures in reliance on the building permit issued to him.

In this case the temporary structure for the truck rental agency had already been erected on the property at the time the new ordinance went into effect in May. It thus became a proper nonconforming use. The board of supervisors could not legally revoke a permit already granted on the basis that it would violate a zoning ordinance not yet promulgated. Although the structure had been built before the act of revocation, there was some question as to whether it had been placed on the property before the revocation, but a discussion on this phase of the matter is pointless. To uphold an act of revocation under the admitted circumstances of this case would be conducive to creating chaos in building operations. Prop-

erty owners would be afraid to make plans consistent with building permits already granted in view of the possibility the permits could be revoked because of possible conflict with proposed zoning ordinances not yet enacted.

In *Yocum v. Power,* 398 Pa. 223, an effort was made to effect the revocation of a permit for the building of a church, the argument being advanced that at the time the permit was granted, the city council had before it a bill to reclassify the area. We found such an argument untenable:

"An unpassed bill in City Council, as one in the State Legislature, has no more governmental authority than a scribbled note on the back of an envelope in the pocket of a legislator.

"If all business in a city or state, touched upon by pending bills, had to mark time until final action was taken on the contemplated legislation, chaos would grip City and Commonwealth . . .

. . .

"The ordinance which the appellants seek to invoke here did not become law until November 25, 1958, which was more than three months after the building permit had been regularly issued under existing law. When the Church acquired the building permit it became vested with an interest that cannot be lightly set aside."

In *Shapiro v. Zoning Board of Adjustment,* 377 Pa. 621, the zoning administrator summarily revoked a use permit because of an amendatory ordinance which outlawed the intended use, but which was passed after the issuance of the permit. We there stated: "The plaintiff's use permits having been applied for and issued as a matter of right under existing law and the subsequent amendatory ordinance being incapable of affecting them, the permits stand wholly unimpaired and must be so recognized by the municipal authorities . . . *Nothing further is required of the plaintiffs*

*for their uninterrupted use of their property to which the registration use permits entitled them.*

"*If,* however, it be thought for any reason that expenditures or other change in the permittees' position in bona fide reliance upon the permits must be shown before vested rights in the permit can be held to have accrued, such proofs are present here . . .". (Emphasis supplied)

It is thus clear from *Yocum v. Power* and *Shapiro v. Zoning Board of Adjustment* that substantial expenditures are not necessary to prevent a revocation of a building permit already granted. The board of supervisors thus improperly revoked the building permit granted plaintiffs and the structure erected as a temporary building in connection with plaintiff's truck rental agency may continue to stand as a nonconforming use to which the rules governing nonconforming uses and extensions thereof shall apply.

Judgments and decrees in the mandamus and equity actions are affirmed in part and reversed in part, as above set forth. Costs to be divided equally between the parties.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I believe that junk and junkyards and junk dealers can and should be subject to ordinances, zoning acts and regulations. However, reasonable and definite standards must be provided. Aesthetics is not a reasonable standard. Not more than (at most) 6 out of 100 persons can agree on what is or is not "aesthetics" and therefore that standard is too vague and uncertain. It follows that the original ordinance was unconstitutional and it is clear that the amendment did not cure this unconstitutionality.

---

DISSENTING OPINION BY MR. JUSTICE EAGEN:

It is my conclusion that, as written, the ordinance here involved is unconstitutional as applied to the ap-

pellants' land. The Act of March 11, 1959, P. L. 13, as amended, 53 P.S. §65758, permits Townships of the Second Class to regulate and license, inter alia, automobile junk or grave yards. However, the present ordinance, enacted thereunder, fails to provide definite standards which would uniformly govern the board of supervisors' determinations of whether or not a permit should issue. Cf. *Dauphin Deposit Trust Co. v. Myers,* 388 Pa. 444, 130 A. 2d 686 (1957).

The standards governing the issuance of permits, as set forth in §6 of the ordinance, are too vague and indefinite. They provide that the permit shall issue only on consideration of the suitability of the property, the character of the neighborhood, and the economic and aesthetic effect of the use on the township. The court below, admitting the vague and indefinite character of the provisions of §6 at least by implication, looked to §10 for clarification and fortification of the necessary standards.

While it is true that the court is not bound by any one section to determine whether proper standards have been set forth, a reading of §10 clearly indicates that the provisions therein do not apply to the situation here presented, i.e., where the owner of a vacant lot seeks a permit to utilize it as a junk yard in the future. Section 10 provides standards for existing junk yards and is in no way applicable to vacant land proposed to be used as a junk yard. Unaided by §10 in the present instance, §6 provides inadequate standards for the issuance of a junk yard permit, and the ordinance as a whole is unconstitutional as applied to the land here involved. The ordinance being unconstitutional, no permit was necessary.

I dissent.

MR. JUSTICE JONES joins in this opinion.