Cox *v.* New Sewickley Township.
Pavelek et al. *v.* New Sewickley Township.

Argued October 19, 1971, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

*Alfred L. Steff, Jr.*, with him *Wallover, Scalera, Reed & Steff*, for appellants.

*Harvey R. Robinson*, with him *Luce, Robinson & Tosh*, for appellees.

OPINION BY JUDGE WILKINSON, December 16, 1971:

The appellants in these two cases challenge the constitutionality of the provisions of the New Sewickley Township Junk Dealer and Junk Yard Ordinance of 1968. The Board of Supervisors passed this ordinance under the authority of Article VII, Section 702, Clause LVIII of the Second Class Township Code, Act of May 1, 1933, P. L. 103, as amended, 53 P.S. §65758. Immediately following its enactment on June 13, 1968, effective June 18, 1968, these actions were instituted to enjoin its enforcement. After a hearing, a preliminary injunction issued. A full hearing was held on August 21, 1968, continued to and concluded on August 26, 1968. The extensive testimony was tran-

scribed, briefs filed, and argument had on August 18, 1969. The court, on June 4, 1970, filed its Opinion and Decree Nisi, modifying the Preliminary Injunction so as to continue it only as to those parts of the ordinance which the court had found unconstitutional, thereby vacating it with regard to the constitutional provisions of the ordinance that remained. The decision of the lower court is affirmed.

A study of the record of this case shows that it has been very capably handled by the able counsel for both the appellants and the appellees, the record is complete, the briefs and arguments well prepared and presented, and the learned court below, on President Judge SAWYER's exhaustive opinion, has given this important case the attention it deserves.

If the lower court's opinion did not deal in detail with many points that are no longer in issue, we would affirm on that scholarly opinion. Instead, we will take each provision of the ordinance which appellants contest and quote, with approval, from portions of the treatment it received by President Judge SAWYER. The references will be to the sections of Ordinance 31 which have been declared to be constitutional by the court below and have been put in issue by appellants in this appeal:

"Section 6. License fee.

"The annual license fee established by Section 6 of this ordinance is $200. Plaintiffs allege that the license fee was set at the maximum allowed by law without regard to the actual costs involved.

"In Commonwealth ex rel. Hines v. Winfree, 408 Pa. 128, 136-137; 182 A. 2d 698 (1962), the court states: 'In determining the reasonableness of the amount of a license fee two principles must be borne in mind: (a) the party who claims that the amount of a license fee is unreasonable has the burden of so proving and (b) in matters of this character municipalities must be

given reasonable latitude in fixing charges to cover anticipated expenses to be incurred in the enforcement of the ordinance and all doubt should be resolved in favor of the reasonableness of the fee: Wm. Laubach & Sons v. Easton, 347 Pa. 542, 550, 32 A. 2d 881.'

"The enabling statute under which this ordinance was enacted authorizes the regulation of junkyards and prescribes the license fee therefor not to exceed $200 per year. As the Pennsylvania Supreme Court recently stated in Mastrangelo v. Buckley, 433 Pa. 352, 385-386, 250 A. 2d 447 (1969) : 'A license fee is a sum assessed for the granting of a privilege. In most instances, where a license is granted the City invariably incurs expense such as the cost of registration and inspection; it is only proper that one who seeks and receives a license should bear this expense. To defray the cost of a license a fee is charged to the licensee; however, this fee must be commensurate with the expense incurred by the City in connection with the issuance and supervision of the license or privilege. See American Baseball Club of Philadelphia v. Philadelphia Moore, Mayor, 312 Pa. 311, 316, 167 A. 891 (1933).'

. . . .

"There are several Pennsylvania cases where junkyard license fees of varying amounts have been upheld where there has not been sufficient evidence to overcome the presumption of reasonableness of the fee and where the fee is commensurate with the cost of regulation and inspection. Mt. Pleasant Township v. Hartlaub, 8 Adams, 121 (1967), annual license fee of $200; Bedminster Township v. LeMaitre, 15 Bucks Law Report, 327 (1965), annual license fee of $100; Commonwealth v. Moore, 12 Bucks Law Report, 314 (1962), annual license fee of $100; Commonwealth v. Rosenzveig, 88 P. L. J. 207 (1938), annual license fee of $500 reduced to $250; Commonwealth v. Paul, 31 D. & C. 613 (1937), annual license fee of $125; City of Pittsburgh

v. Streng, 90 Pa. Superior 288 (1927), annual license fee of $150.

. . . .

"Under Section 14 of the ordinance, the township chief of police is required to regularly inspect the premises of every licensee for the purpose of determining that the licensee has established and maintained his premises in full compliance with the provisions of the Ordinance. The township chief of police is required to prosecute any discovered violation of the Ordinance. Further, the township chief of police is required, not less than twice yearly, to furnish to the Township Board of Supervisors a written report of his inspections. There are various costs to be considered in connection with these inspections, including the officer's salary, travel time, mileage, and the cost of his written reports. The $200 fee required by Section 6 is not so disproportionate to the costs reasonably expected to be incurred by the Township in issuing and regulating licenses under this ordinance as to render said fee invalid."

"Section 13.

. . . .

"Sub-section 13(d) specifies certain set-back provisions regulating the location of junkyards. Sub-section 13(f) relating to fencing and stacking, and Sub-section 13(g) providing for the planting of shrubbery are intended to apply in conjunction with Sub-section 13(d).

"Contrary to plaintiffs' contention, Sub-section 13 (d) and 13(f) relating to set-backs and fencing are not so vague and indefinite as to be incapable of reasonable application.

. . . .

"Regulations governing the fencing and screening of junkyards have been held invalid in other jurisdictions when based solely on aesthetic considerations. Town of Vestal v. Bennett, 199 Misc. 41, 104 N.Y.S. 2d

830 (1950), Akron v. Klein, 171 Ohio St. 207, 12 Ohio Ops. 2d 331, 168 N.E. 2d 564 (1960), Defiance v. Killion, 116 Ohio App. 60, 21 Ohio Ops. 2d 301, 186 N.E. 2d 634 (1962).

"On the other hand, regulations governing the fencing and screening of junkyards, even though aesthetic factors were involved in their adoption, have been upheld in other jurisdictions on considerations of public safety. City of Shreveport v. Brock, 230 La. 651, 89 So. 2d 156 (1956), Vermont Salvage Corp. v. Village of St. Johnsbury, 113 Vt. 341, 34 A. 2d 188 (1943), People v. Sevel, 120 Cal. App. 2d Supp. 907, 261 P. 2d 359 (1953), Murphy v. Town of Westport, 131 Conn. 292, 40 A. 2d 177 (1944).

"In addition, the Hanover Township Ordinance, the constitutionality of which was upheld by the Supreme Court of Pennsylvania in Price v. Smith, 416 Pa. 560, 207 A. 2d 887 (1965), contained the following provision respecting set-backs and fencing: 'Section 10(a). From and after the effective date of this ordinance, no junk yard and scrap yard shall be established closer to any street or side property line than 50 feet and must be entirely enclosed within a solid wall or fence not less than 6 feet high.'

"Subsection 13(d) of the New Sewickley Township ordinance contains the following set-back provisions: 'No junk shall be stored or accumulated nor shall any structure be erected within twenty-five (25) feet of the side and rear lines of the licensed premises nor within seventy-five (75) feet of any existing dwelling house erected upon premises adjacent to the licensed premises. Nor shall any junk be stored or accumulated or any structure be erected that is used in connection with said junk yard within forty (40) feet of that line of the licensed premises abutting a public street or highway within the Township of New Sewickley. PROVIDED: That in cases where two or more lines of the licensed

premises abut public streets or highways within the Township one line only of such premises shall be governed by the above-provided set-back of forty (40) feet. PROVIDED: That nothing contained in this sub-section shall apply to existing structures pertaining to and being used in connection with junk yards presently established and operating.'

"There are specific safety factors behind the set-back requirements of Subsection 13(d). With respect to traffic safety, the Township Supervisors were concerned about the possible obstruction of view created by the storing of 'junk' cars along the side of the highway (T-138) and the danger of drivers traveling to the center of the road and to avoid 'junk' cars parked along the side of the road (T-139, 140). The set-back requirement would also lessen the dangers from fire and explosion which might result from junk yard operations. For these reasons, the set-back requirements of Subsection 13(d) are substantially related to the safety of the community and are, therefore, valid and constitutional, and constitute a proper exercise of the police power of the Township.

"Subsection 13(f) provides that junkyards must be enclosed by a fence or wall not less than six feet in height. There is evidence to indicate that this is a reasonable requirement, substantially related to the safety of the community. The testimony of Mr. Kenneth Ruckert, one of the Township Supervisors, indicates that one of the purposes behind the fencing requirements found in subsection 13(f) was to help prevent theft from the yards and thereby reduce law enforcement problems. (T-141). There are a significant number of thefts from junkyards in New Sewickley Township. Fences would help to discourage and to prevent such thefts. Mr. Ruckert's testimony also indicates that the Township Supervisors were concerned about the danger of injury to children who might tres-

pass and play in an unfenced junkyard (T-143). It is not uncommon for children to stray into the junkyards in New Sewickley Township where they are subject to injury from such dangers as sharp pieces of scrap and broken glass which are normally found in a junkyard. There is even an indication that rats are a problem in junkyards and that one of the plaintiffs, Mr. Novak, has suffered harm from them. (T-34). We, therefore, conclude that the fencing requirement is valid and constitutional and a legitimate exercise of the police power.

"Subsection 13(f) also provides that no two or more vehicles or major parts thereof may be stacked on top of one another or otherwise as to protrude above the fence. It is apparent that one of the principal purposes behind this requirement is aesthetics. However, the stacking requirement is related to the public safety to the extent that it helps to control the spread of fires and to reduce the danger of injury to persons in the junkyards and is, therefore, valid and constitutional and a legitimate exercise of the police power of the township.

"The planting requirement of Subsection 13(g) is based on aesthetic considerations. The township argues that a regulation, even though based on aesthetic considerations, which serves to promote the general welfare is a legitimate exercise of the police power.

"The decision of the Pennsylvania Supreme Court in Bilbar Const. Co. v. Easttown Twp. Board of Adjustment, 393 Pa. 62, 73, 141 A. 2d 851 (1958), and Best v. Zoning Board of Adjustment, 393 Pa. 106, 116, 141 A. 2d 606 (1958), indicates that the concept of the general welfare admits of aesthetic considerations and may be a sufficient basis to justify a police power regulation. In Bilbar and Best, the Pennsylvania Supreme Court held that general welfare alone, unconnected with health, safety or morals was a justifiable basis for zoning.

"Without imposing undue hardship on junkyard operators, the planting requirement serves to screen unsightly junkyards from public view. Keeping in mind that the community has a definite interest in preserving the value of property in the community, in providing a pleasant environment for its citizens, and in protecting the scenic value of the community for its residents and visitors, the planting requirement serves to promote the general welfare of the Township of New Sewickley and is, therefore, valid and constitutional and a legitimate exercise of the police power.

. . . .

"Even though it might be difficult or expensive for plaintiffs to comply with Section 13 of New Sewickley Township Ordinance No. 31, the interests of the community outweigh this consideration. It is apparent that aesthetic considerations were involved to one degree or another in the adoption of the set-back, fencing, stacking and planting regulations found in Section 13. However, these regulations do bear a substantial relationship to proper objects of the police power, namely, public health and safety, and the general welfare, and are therefore a legitimate exercise of that power."

"Section 15.

"The 20-foot space required by Section 15 between rows of junk might be unreasonable if its only purpose was to facilitate inspection of junkyards. Obviously the junkyards could be adequately inspected with far less space between the rows. However, the spacing requirement is necessary in order to allow fire and emergency equipment to maneuver within the junkyards. It might also be noted that this 20-foot space helps to prevent the spread of fires. To the extent that it serves to lessen the dangers from fires in junkyards in New Sewickley Township, the 20-foot spacing provision is a reasonable requirement serving to protect the safety of the community and is therefore valid,

constitutional and a legitimate exercise of the police power. Further, the provision that junk be arranged in a neat and orderly fashion is not so vague and indefinite, as plaintiffs argue, as to be incapable of reasonable application."

"Section 17.

"Section 17 which requires a 20-foot set-back from any river or stream or any other natural water course is substantially related to the public safety in that it helps to prevent pollution of these waterways and is therefore valid, constitutional and a legitimate exercise of the police power. Under certain circumstances, the Township Supervisors have authority to protect the banks of streams from erosion and to prevent floods in the township. (See 53 P.S. 65516) This requirement that junk be stored clear of the stream banks insures that they will be protected and that the water will continue to flow unpolluted in its natural course. While this set-back applies to a significant portion of plaintiffs' land, 20 feet on either side of any natural water course, its benefit to the community outweighs any inconvenience caused to the plaintiffs.

"Provisions regulating similar aspects of the operation of a junkyard were contained in the Hanover Township ordinance, the constitutionality of which was upheld in Price v. Smith, supra."

The Legislature has seen fit to provide in the Second Class Township Code specific authority "to regulate and license junk dealers and the establishment and maintenance of junkyards and scrap yards. . . ." Act of May 1, 1933, supra, 53 P.S. §65758. The township authorities must do so in a reasonable manner. The record in this case more than amply supports the lower court's findings that the provisions here in issue are reasonable.

Affirmed.

CONCURRING AND DISSENTING OPINION BY JUDGE MANDERINO:

I concur in the majority opinion upholding the constitutionality of the New Sewickley Township Junk Dealer and Junk Yard Ordinance of 1968 except those portions of the ordinance which prohibit any stacking of vehicles and those portions of the ordinance which require planting based solely on aesthetic considerations. These controls are not sufficiently related to the health, safety and welfare of the community.