## Commonwealth v. Spencer

*Gailey C. Keller, District Attorney*, for Commonwealth.

*Sidney A. Simon*, for defendant.

MYERS, *P. J.*, August 9, 1973—

## HISTORY OF THE CASE

Defendant has operated an auto salvage junkyard for several years upon a leased premises situate along Pennsylvania Route 42 in Hemlock Township, Columbia County, Pa.

In 1970 the Hemlock Township Board of Supervisors enacted township ordinance 4-70 entitled "An Ordinance . . . regulating junk dealers and the use and operation of junkyards, providing for the

licensing of such business, and providing penalties for violations."

Following enactment of said ordinance, defendant applied for and was issued a license under the provisions of said ordinance, which license expired December 31, 1971.

Defendant applied for renewal of his license to continue operating said junkyard in 1972, but was refused on the grounds that he was not complying with certain provisions of the ordinance.

Defendant continued to operate his junkyard and was arrested for violation of the ordinance. Defendant was found guilty by the district magistrate and fined $50 plus costs. Defendant appealed said conviction and hearing de novo was held by this court on the appeal. The basis for said appeal was the alleged unconstitutionality of the above Hemlock Township ordinance.

## DISCUSSION

The Act of March 11, 1959, P.L. 13, as amended, 53 PS §65758, permits townships of the second class to regulate and license the operation of junkyards. The exercise of this power, however, must have a substantial relation to the health, safety and general welfare of the public and does not extend to an arbitrary, unnecessary or unreasonable intermeddling in the private ownership of property. See Anstine v. Zoning Board of Adjustment, 411 Pa. 33.

It has been held that junkyards are not nuisances per se: Rogalski v. Upper Chichester Township, 406 Pa. 550.

It has been uniformly held that the burden of proving clearly and unmistakably the unconstitutionality of a zoning ordinance is upon the person so

asserting, in this case, defendant. This burden of proof is a heavy one. Accompanying this burden is the rule that where the constitutionality of a zoning ordinance has been attacked, it is presumed that the township legislative body acted with the purpose to serve the public welfare, and that all intendments are in favor of the township's action. See Gaudenzia, Inc. v. Zoning Board of Adjustment, 4 Pa. Commonwealth Ct. 355; see also Anstine v. Zoning Board of Adjustment, supra.

On the other hand, it is fundamental that a zoning ordinance, or portions thereof, which are so vague and indefinite that they do not afford sufficient guidelines to insure uniformity in the application or enforcement of its provisions are unconstitutional. See Price v. Smith, 416 Pa. 560.

A licensee (defendant herein) is entitled to be reasonably informed by the terms of the ordinance just what conduct is proscribed and what is permitted under the ordinance.

Defendant relies heavily upon the case of Township of Upper Milford v. Beck, 32 Lehigh 420 (1967). In an opinion by Judge Wiend, of the Lehigh County Court of Common Pleas, the court declared unconstitutional a township ordinance relating to junkyards, which ordinance was very similar to the Hemlock Township ordinance in question.

However, in December 1971, the Commonwealth Court in the case of Cox v. New Sewickley Township, 4 Pa. Commonwealth Ct. 28 (1971), ruled upon several very similar questions and reached a different result.

We believe an orderly approach to this problem would be to take each provision of the Hemlock Township ordinance that has been placed in issue directly or indirectly by the testimony and/or legal

memoranda offered by the parties and rule upon the same.

Section 2 of the ordinance establishes an annual license fee of $50 or $100, depending upon the size of the junkyard area. The court, in Mastrangelo v. Buckley, 433 Pa. 352 (1969), held that "[a] license fee is a sum assessed for the granting of a privilege. In most instances, where a license is granted, the . . . [township] invariably incurs expenses such as the cost of registration and inspection; it is only proper that one who seeks and receives a license should bear this expense. To defray the cost of a license, a fee is charged to the licensee; however, this fee must be commensurate with the expense incurred by the . . . [township] in connection with the issuance and supervision of the license or privilege."

There are several Pennsylvania cases where junkyard license fees of varying amounts have been upheld where there has not been sufficient evidence to overcome the presumption of reasonableness of the fee, and where the fee is commensurate with the cost of regulation and inspection. See Cox v. New Sewickley Township, supra, and the cases cited therein.

In the instant case, it is clear that the license fee set forth by the Hemlock Township ordinance is reasonable under the circumstances, and, therefore, valid and constitutional.

Section 4 of the ordinance provides that:

"Each applicant shall submit with his application for license a plot of the premises to be licensed. Upon receipt of the application by the Board, the Board may issue a license or refuse to issue such license after an examination of the application and taking into consideration the suitability of property

proposed to be used, the character of the properties located nearby, and the effect of the proposed use upon the Township, both economic and aesthetic. In the event the Board shall issue such license it may impose upon the licensee and the premises to be licensed such terms and conditions in addition to the regulations contained in this Ordinance as may be deemed necessary to carry out the spirit and intent of this Ordinance."

We conclude that section 4 of the ordinance is unconstitutional because it goes far beyond that which is reasonable. Even after a licensee has paid the license fee, he cannot be certain that a license will be issued to him. The board of township supervisors may refuse to issue the license for aesthetic reasons or because of the economic effect of the junkyard on other real estate in the township or because, in its opinion, the property isn't "suitable."

These standards set forth in section 4 for the issuance or refusal of a license are too vague and indefinite. They are so vague and indefinite that they cannot and do not afford a sufficient guide to insure uniformity in the application of the licensing provisions. Nowhere in the ordinance are there reasonably sufficient guidelines to assist the township supervisors in enforcing this section and the determining which land is "suitable" or when the "character" of neighboring property is such as to prohibit the issuance of a license.

Furthermore, when it is determined to issue a license, the board may attach such terms and conditions, in addition to other regulations contained in the ordinance, as it deems necessary to carry out the "spirit and intent" of the ordinance. The ordinance provides no effective reasonable limitations

upon the board as to what conditions it may impose upon the operation of a junkyard. Such, therefore, makes it very possible to achieve results which are unreasonable, arbitrary and confiscatory. See Township of Upper Milford v. Beck, supra.

Section 5 (preventing one person from operating more than one junkyard), and section 6 (regulating the transfer of licenses issued under this ordinance), are both legitimate exercises of police power of the township and, therefore, valid and constitutional.

Section 7 of the ordinance is divided into ten sub-sections (A through J) and regulates the operation of the junkyard and its contents, and further provides restrictions for maintaining its appearance and landscaping.

We conclude that all of the sub-sections of section 7, with the exception of sub-section B, are substantially related to the welfare and safety of the community and are, therefore, valid and constitutional, and constitute a proper exercise of the police power of the township.

Without imposing undue hardship upon the junkyard operators, the setback, planting and landscaping requirements serve to screen unsightly junkyards from view.

Keeping in mind that the community has a definite interest in preserving the value of property in the area, in providing a pleasant environment for its citizens and protecting the scenic value of the community for its residents and visitors, the above requirements serve to promote the general welfare of the township.

This is so, even though it might be difficult or expensive for the junkyard operator to comply with

these sections. The interests of the community outweigh these considerations.

For example, in sub-section E, it is provided, inter alia, that junked autos shall be spaced in rows with at least 15 feet between each double row to permit movement of fire-fighting equipment. To the extent that it serves to lessen the dangers from fires in junkyards, the 15-foot spacing provision is a reasonable requirement, serving to protect the safety of the community, and is, therefore, valid, constitutional and a legal exercise of police power. See Cox v. New Sewickley Township, supra.

Since aesthetic conditions or regulations are inherent in certain sub-sections of section 7, we might add that this opinion should not be understood to hold that aesthetic considerations, as such, are invalid per se when used as a guideline or regulation.

However, we do hold that guidelines based solely upon aesthetic considerations, with nothing more, are unconstitutional.

Thus, we hold that portions of an ordinance prohibiting certain activities based solely upon aesthetic considerations, not substantially relating to the health, safety and welfare of the community are unconstitutional. However, if aesthetic considerations are tied in with, for example, matters of public safety to reduce the danger of injury to persons in the junkyard, such would then not be unconstitutional. Thus, a fence requirement to help prevent thefts from junkyards and thereby reduce law enforcement problems, or to reduce the danger of injury to children, would be held to be constitutional. See Cox v. New Sewickley Township, supra.

As to the sub-section B of section 7, which per-

tains to fencing requirements, the sub-section is set forth in the ordinance as follows: "Every junkyard shall be completely fenced with a type of fence approved by the Board."

The fencing standards in the sub-section B of this ordinance are so vague and indefinite that they do not afford a sufficient guide to insure uniformity in the application and enforcement of this provision of the ordinance. Nowhere in the ordinance are there any provisions to correct this indefiniteness and supply guidelines for the uniform application of this sub-section.

Therefore, we conclude that sub-section B of section 7 is invalid and unconstitutional.

However, this does not mean that the fencing requirement per se is unconstitutional. We find that sub-section B of section 7 is invalid and unconstitutional because no reasonable guidelines are set forth to regulate the height, type, placement, etc., of the fence.

We thus hold that the fencing requirement per se is constitutional, so long as the fencing guidelines bear a reasonable and substantial, but not excessive, relationship to the proper objects of the township police power, namely, public health, safety and the general welfare.

As to the remaining sections of this ordinance, to wit, sections 9 through 14, we conclude that they represent reasonable requirements serving the public health, safety and general welfare and are, therefore, legitimate exercises of the township police power.

Therefore, in conclusion, we hold that sections 4 and 7B are unconstitutional, while the remaining provisions of the ordinance are constitutional. Since the ordinance contains a severability clause,

the unconstitutionality of one section and a portion of another section does not render the entire ordinance unconstitutional. Thus, we find this ordinance constitutional and valid, except for sections 4 and 7B. However, since defendant was arrested for violation of section 4, we make the following

## ORDER

And now, August 9, 1973, we adjudge the defendant not guilty. Costs shall be paid by the County of Columbia. Fines and costs heretofore paid by defendant, if any, shall be returned to defendant forthwith.