**CITY OF ENID, Oklahoma, a Municipal Corporation, Appellee,**

v.

**Sam RAMER, Appellant.**

**No. 47398.**

Court of Appeals of Oklahoma,
Division No. 1.

Oct. 5, 1976.

Released for Publication by Order of Court of Appeals Oct. 29, 1976.

McKnight, Gasaway, McKnight & Beck by H. L. Gasaway, Enid, for appellee.

Archibald B. Hill, Jr., Oklahoma City, for appellant.

BOX, Judge:

An appeal by Sam Ramer from a Summary Judgment enjoining defendant from operating a salvage yard within the City of Enid without a license.

Plaintiff City of Enid filed its petition alleging that defendant was engaged in a salvage yard operation without a license as required by Revised Ordinances 8–221, 8–222 and 8–223. City prayed for an injunction against defendant.

Defendant filed a general denial. Thereafter defendant's deposition was taken and filed wherein he admitted he did not then have a salvage yard license and was maintaining a salvage yard operation in the City of Enid.

Plaintiff filed a Motion for Summary Judgment. After the hearing on the motion, the court entered its order finding that it was stipulated that the "Defendant, Sam Ramer, was licensed for a long period of time under a prior City ordinance of Enid, Oklahoma, but he never obtained a license under either of the new ordinances, on this subject because he had not met the restrictions." This order further recited that the defendant contended that the new ordinance was unconstitutional as to the defendant, but not as to future applicants. Thereafter both sides filed written briefs, the court sustained plaintiff's motion, and enjoined defendant from operating a salvage yard within the City of Enid without first obtaining a Salvage Yard License as required by the ordinances.

Defendant (appellant) appeals contending as follows:

"I. That the Statutes (City Ordinances) are to be construed as having a prospective operation unless the purpose and the intention of the Legislative (City Council) body to give them a retrospective effect is expressly declared or is necessarily implied from the language.

"II. That the Municipality's Power to interfere through zoning regulations with general rights of landowner is not unlimited, and restrictions on character of use of property cannot be imposed if it does not bear substantial relation to public health, safety, morals or general welfare."

The revised ordinances, reproduced and made a part of this opinion, read as follows:

## OCCUPATIONS, LICENSES AND REGULATIONS

### CHAPTER 20. SALVAGE YARDS

8–221 Definitions

8–222 Regulations

8–223 License and Bond

8–221. DEFINITIONS. As used in the Ordinance, the terms shall have the meaning hereafter ascribed to them as follows:

1.1. *Salvage Yard.* Salvage yard shall mean any yard, premises, or tract of land in or upon which salvage is stored or maintained, for business or commercial use or in connection therewith.

1.2. *Salvage.* Salvage shall mean any non-operating motor vehicle or part thereof.

1.3. *Non-operating Vehicle.* A non-operating vehicle shall mean any vehicle that the certificate of title to which has been cancelled, or which has been wholly or partially dismanteled or is kept for the purpose of dismantling or selling or wrecking or using parts therefrom, or which is in such a condition that it will not operate and is not intended to be made operational as a motor vehicle.

8–222. REGULATIONS. No person, firm or corporation shall carry on, operate, own, maintain or conduct a salvage yard as herein defined unless the same is done in compliance with the following regulations:

2.1. Such establishment shall be carried on, maintained or conducted entirely inside

an enclosed building or buildings, or upon premises fenced with a fence that is at least 6 feet high of solid wood or masonry construction on the following sides or portions thereof:

(a) Any side which adjoins or butts a street or property zoned for residential use. Property separated from the salvage yard by only a street, alley, easement or public way, shall be considered as abutting or adjoining said salvage yard.

(b) Any side to which there is an unrestricted view from a street.

(c) That portion of a side not abutting or adjoining a street which is within 30 feet of any street, or property line abutting the street.

2.2. Fences and walls shall be maintained in a neat, substantial, safe condition, without advertising thereon.

2.3. The density of motor vehicles on the salvage yard shall not exceed 1 vehicle for each 200 square feet of land or floor area. Provided, however, the owner of any salvage yard which has a greater density of vehicles thereon upon the effective date of this ordinance shall not be required to move the same but shall not be permitted, however, to place any more vehicles thereon until such time as it can be done without exceeding said density of one vehicle per each 200 square feet.

2.4. The salvage located in or on said premises shall be so arranged that reasonable inspection or access on all parts of the premises can be had at any time by the proper fire, health, police and building officials.

2.5. Weeds and rank vegetation shall not be permitted on said premises.

2.6. There shall be provided a sales or office building on the property to be used in conjunction with the salvage operation.

2.7. A receiving area for automobiles prior to storing shall be maintained in a minimum size of 1800 square feet per acre of salvage yard.

2.8. Fire road shall be provided in a minimum width of 20 feet.

2.9. There shall be filed with and approved by the City a salvage yard layout plan showing:

(a) location and size of area involved;

(b) all improvements of surrounding property lying within 300 feet of the proposed salvage yard;

(c) location and type of fence;

(d) location of storing area and sales office;

(e) location of curb cuts on property;

(f) general layouts of access or fire roads within the salvage yard.

(Amended Ordinance # 73–13, Effective Date July 1, 1973.)

8–223. LICENSE AND BOND. No person shall operate or maintain a salvage yard in the City of Enid without first obtaining a license therefore. The license shall be issued upon payment of a fee of $10.00 per year and upon proper application being made showing compliance with this ordinance and the zoning ordinances of the City (Amended Ordinance #72–39, effective November, 1972.)

Appellant sets out in his brief a number of decisions of the Supreme Court holding as in the case of *Mid-Continent Casualty Co. v. P & H Supply, Inc.*, Okl., 490 P.2d 1358,

*"Syllabus by the Court*

"Statutes are to be construed as having a prospective operation unless the purpose and intention of the Legislature to give them a retrospective effect is expressly declared or is necessarily implied from the language."

 With this rule of law this Court agrees; but from a reading of the ordinances, supra, same apply only to acts occurring after its enactment. Thus appellant's contention in this regard is without merit.

Appellant contended in his brief in part as follows:

"With respect to Appellants Contention No. II, we are further concerned with Municipality's powers over Landowners and the use of their Property.

"In the case of CITY OF SAND SPRINGS V. COLLIVER, Okl., 434 P. 2d 186 (1967) this Court held:

"'Municipality's power to interfere through zoning regulations with general rights of landowner is not unlimited, and restrictions on character of use of property cannot be imposed if it does not bear substantial relation to public health, safety, morals or general welfare.'

\* \* \* \* \* \*

"If we were to grant Municipality's with unlimited power as is above restricted, No Business, Residential Purpose, or any other use of Property could possibly be safely used by Landowners from day to day. Such unlimited powers would have such a Horrendous effect as to grant to such municipality's the power such as a complete Police State, in violation of the Constitution of the United States of America, and the Constitution of Oklahoma."

Again we point out that the ordinances now in question are not zoning ordinances as contended by appellant, but are ordinances enacted under the police power to regulate business and occupations as set out in the title of same, supra.

From our review of the law we find that the validity of salvage regulations has not been passed on by our Supreme Court. However, ordinances declaring a junk yard a nuisance, and prohibiting the same was upheld in Finkelstein v. City of Sapulpa, 106 Okl. 297, 234 P. 187, wherein the court held as follows:

"The extent of the power of the court in the instant case is limited to a determination as to whether the ordinance in question is, under the facts, unreasonable and arbitrary, and if such ordinance is not unreasonable or arbitrary, the determination by the city commissioners that the junk yard in question was injurious to the health and safety of the community and a public nuisance is conclusive upon the court.

"A 'public nuisance' is not necessarily one affecting the government or the entire community of the state, but it is public if it affects the surrounding community generally or the people of some local neighborhood."

And the court at p. 188 set out the following:

"'A very clear abuse of the police power must be shown in order to justify the court in declaring ordinances regulating pawnbrokers, junk dealers, and dealers in secondhand goods, to be unreasonable and void.' Grand Rapids v. Braudy, 105 Mich. 670, 64 N.W. 29, 32 L.R.A. 116, 55 Am.St.Rep. 472."

The Supreme Court of Montana stated in the case of City of Butte v. Paltrovich, 30 Mont. 18, 75 P. 521,

"The question of the reasonableness of an ordinance regulating a certain business is one of fact of which the city council is the best judge, and in the absence of a clear showing to the contrary, its reasonableness must be presumed."

Regarding appellant's questioning the constitutionality of the ordinances, supra, our Supreme Court in the case of Hover v. Oklahoma City et al., 133 Okl. 71, 271 P. 162, wherein plaintiff sought to prohibit the City from enforcing an ordinance establishing certain hours for sale of products on California Street, held as follows:

"An ordinance of a city will not be declared void under the Fourteenth Amendment to the Constitution of the United States on the ground that it denies to a party the equal protection of the law, if within the sphere of its operation it affects alike all persons similarly situated."

Furthermore the Court in the case of *Montgomery v. Oklahoma City*, 195 Okl. 312, 157 P.2d 454, stated:

"1. Where the language of an ordinance conclusively shows that it was the intention of the city legislators to regulate business in order to protect the public from imposition or injury the ordinance is in exercise of police power or a police regulation.

"2. The police power is very broad and comprehensive and is exercised to promote the health, comfort, safety and welfare of society. Under it conduct of an individual and the uses of property may be regulated so as to interfere to some extent with the freedom of the one and the enjoyment of the other.

"3. The power of the court to declare invalid what is deemed to be an unreasonable legislative regulation of a business or occupation must from the nature of the power granted be exercised with the utmost caution and only when it is clear that the ordinance or law so declared void passes entirely beyond the limits which bound the police power and infringes upon rights secured by the fundamental law."

See also *Pacific States Box and Basket Company v. White*, 296 U.S. 176, 56 S.Ct. 159, 80 L.Ed. 138.

Other states have upheld ordinances regulating salvage yards, to-wit: *Cox v. Township of New Sewickley*, 4 Pa.Cmwlth. 28, 284 A.2d 829 (1971); *City of Shreveport v. Brock*, 230 La. 651, 89 So.2d 156 (1956); *People v. Sevel*, 120 Cal.App.2d Supp. 907, 261 P.2d 359 (1953); *State ex rel. Civello v. New Orleans*, 154 La. 271, 97 So. 440 (1923).

■■ From a review of the record and evidence before this Court we hold that the trial court was correct in prohibiting appellant from operating a salvage yard without first obtaining a license. Furthermore, said ordinances are not unconstitutional as contended by appellant. Thus we affirm.

AFFIRMED.

REYNOLDS, P. J., and ROMANG, J., concur.