Mt. Joy Township, Adams County, Pennsylvania, Appellant *v.* Davies Used Auto Parts et al., Appellees.

Argued January 30, 1984, before Judges ROGERS, CRAIG and COLINS, sitting as a panel of three.

*Samuel E. Teeter, Teeter, Teeter & Teeter,* for appellant.

*Kenneth Lee Rotz, John Wills Beach, P.C.,* for appellees.

OPINION BY JUDGE ROGERS, March 7, 1984:

Mt. Joy Township has appealed from a final order of the Court of Common Pleas of Adams County entered against it in an action for declaratory judgment brought by local junkyard interests. The court declared Section 10 of the township's junkyard regula-

tory ordinance to be invalid. Section 10 of the ordinance is attached hereto as an appendix.

Mt. Joy Township is a Township of the Second Class. The junkyard ordinance was enacted pursuant to Section 702, cl. LVIII of the Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §65758, which empowers townships of the second class ''[t]o regulate and license junk dealers and the establishment and maintenance of junk yards and scrap yards including, but not limited to, automobile junk or grave yards and to prescribe license fees therefor not to exceed two hundred dollars per year.''

The court of common pleas founded its decision to invalidate Section 10 on the principle that the provisions of ordinances which are essentially zoning regulations must be adopted as, and provided with, the apparatus associated with zoning ordinances, such as comprehensive plans, zoning hearing boards and the procedural devices by which the zoning power is exerted and administered.

The authorities for the principle just described are the cases of *Board of Supervisors of Upper Frederick Township v. Moland Development Company, Inc.,* 19 Pa. Commonwealth Ct. 207, 339 A.2d 141 (1975) and *Board of Supervisors of Franklin Township v. Meals,* 57 Pa. Commonwealth Ct. 129, 426 A.2d 1200 (1981). The ordinance which we held offended the principle in the *Moland* case was entitled the ''Upper Frederick Township Regulation of Lot Size and Sewage Disposal Ordinance'' and ordained a minimum lot size, frontage, lot depth, and front, rear and side yard dimensional requirements for structures used or proposed to be used for human habitation throughout the township. It also made provision for exceptions for hardship. In *Meals,* the offending ordinance was entitled the ''Township Building Permit Ordinance'' and it required a thirty-five foot setback for all build-

ings thereafter constructed in the township. In both we held that the ordinances were essentially zoning enactments and were invalid because they did not provide the "procedural safeguards" which must accompany zoning ordinances. Neither case concerned a junkyard; and the legal defense of each was based upon the powers given townships generally to promote health and safety.

Section 10 of the Mt. Joy junkyard ordinance requires junkyard operations to be set back from roads, watercourses and property lines. Its only subject is junkyards; the authority for its adoption is specific, cl. LVIII, of Section 702 of the Code, empowering townships to regulate the maintenance of junkyards.

A germane precedent for the decision of this case is *Cox v. New Sewickley Township*, 4 Pa. Commonwealth Ct. 28, 284 A.2d 829 (1971). We there upheld as a proper exercise of the power to regulate junkyards given by Section 702, cl. LVIII of the Second Class Township Code, a junkyard ordinance which established setbacks, side and rear yards and screening standards. In *Price v. Smith*, 416 Pa. 560, 207 A.2d 887 (1965), the Pennsylvania Supreme Court upheld a junkyard ordinance which we are told in *Cox*[1] included a provision that every junkyard should be placed no closer to a street or property line than fifty feet and should be entirely enclosed within a solid wall or fence not less than six feet high.

*Cox* and *Price v. Smith* did not address the issue of whether zoning enabling legislation has superseded Section 702, cl. LVIII to the extent that a junkyard ordinance imposes setbacks and side yard limitations. However, they do hold that setbacks and side yard limitations are appropriate means of regulating the establishment and maintenance of junk-

---

[1] 4 Pa. Commonwealth Ct. at 34, 284 A.2d at 832.

yards by ordinance adopted pursuant to Section 702, cl. LVIII; and they concern junkyard ordinances, not ordinances imposing municipality-wide lot size and setback restrictions on the basis of grants of general police power. We add that they were decided when townships of the second class had zoning powers— *Price v. Smith* when former Article XX of the Second Class Township Code was extant and *Cox* when the Pennsylvania Municipalities Planning Code was in force.

Only four of the eleven subsections of Section 10 of the Mt. Joy ordinance concern matters which might also be the subject of zoning control. Subsection (f) requires a twenty-five foot setback of junkyard activities from roads adjacent to property lines and a thirty foot setback from watercourses. Subsection (h) prohibits the accumulation of junk within 500 feet of churches, playgrounds and other places of public resorts. Subsection (i) requires screening, a requirement upheld in *Price v. Smith*. Subsection (k) requires the provision of off-street parking places for employees and patrons. These seem to us to be eminently appropriate subjects of regulation of the maintenance of junkyards authorized by Section 702, cl. LVIII. To the degree that one or more may be beyond the reasonable necessities of the case, they can be contested, as this case was, by action for declaratory judgment or by appeal under the Local Agency Law from a licensing adjudication or by suit in equity.

Order reversed.

APPENDIX

*Section 10.* REGULATIONS

Every junk dealer licensed under this ordinance shall constantly maintain the licensed junk yard premises in the manner prescribed by this Section and by any subsequent regulations adopted by the Board:

(a) Such premises shall at all times be maintained so as not to constitute a nuisance or a menace to the health of the community or to residents nearby or a place for the breeding of rodents and vermin.

(b) The license issued under this Ordinance shall not be authority for the storage, handling, processing, or disposing of wastes regulated under Act 241 of 1968, known as "Pennsylvania Solid Waste Management Act."

(c) Whenever any motor vehicle shall be received as junk in the licensed junk yard premises, all gasoline shall be drained and removed therefrom.

(d) Junk shall be stored and arranged in a neat and orderly fashion and the drainage facilities of the premises shall be such as to prevent the accumulation of stagnant water upon the premises, and to facilitate access for fire-fighting and inspection purposes. There shall be at least sixteen (16) feet open space between each row of junk. Junked motor vehicles may be stored end-to-end (a double row) for purposes of application of this spacing requirement.

(e) A junk dealer licensed under this ordinance shall not burn more than one motor vehicle or its equivalent at one time. No oil, grease, tires, gasoline or other similar material that might be dangerous or tend to produce noxious smoke or odors shall be burned within a junk yard at any time. Burning of vehicles must be attended and controlled at all times.

(f) The junk yard premises to be licensed shall be set back a minimum distance of twenty-five (25) feet from the right-of-way lines of all abutting streets, roads or highways, a mini-

mum distance of one hundred (100) feet from any existing dwelling house erected upon premises adjacent to the licensed premises but in any event not less than a minimum distance of twenty-five (25) feet from property lines of all adjacent properties, and a minimum distance of thirty (30) feet from any river, stream, run, creek, floodplain or other natural watercourse in the Township. The area between the setback line and such right-of-way lines, other property lines and natural watercourses, shall be at all times kept clear and vacant, free of weeds, debris, and junk, including any motor vehicle incapable of meeting State inspection requirements.

(g) No gasoline, oil or any other hazardous liquid or substance shall be stored less than a minimum distance of one hundred (100) feet from any river, stream, run, creek, or other natural watercourses in the Township.

(h) In no event shall any junk be kept, stored or accumulated on a junk yard premises, nor any structure be erected to be used in connection with a junk yard, within five hundred (500) feet of any existing church, cemetery, school, playground, restaurant, motel or other place of public use or accommodation. PROVIDED: That nothing contained in this subsection shall apply to existing structures used in connection with junk yards presently established and operating which are otherwise in compliance with the provisions of this ordinance or to any junk presently kept, stored or accumulated thereon.

(i) Screening shall be provided for any junk yard which is within five hundred (500)

feet of the nearest edge of the right-of-way of an abutting public road, street or highway. Such screening shall be constructed, erected and/or maintained at a height of not less than six (6) feet; shall be controlled by the setback provisions of subsection (f) hereof; and shall be completed within twelve (12) months after the effective date of this Ordinance. PRO-VIDED: That if in the sole and exclusive opinion of a majority of the Board, it should appear that the owner and/or operator of a junk yard situated within the Township has clearly demonstrated that he is making a continuing bona fide effort to comply with the screening provisions of this subsection, then and in such event the Board may, in its sole discretion, grant an extension of time to such owner or operator for the completion of such screening, upon receipt of a written letter from the said owner or operator requesting such an extension of time.

(j) No two or more vehicles or major parts thereof may be stacked on top of one another.

(k) A person licensed under this Ordinance shall provide designated off-street parking and loading facilities from a single entrance off any adjacent street, road or highway, which facilities shall have, at a minimum, a stone and gravel base, and which shall be of a size sufficient to accommodate one parking space for the junk dealer operating the junk yard and an additional space for each employee of such junk dealer plus a sufficient number of additional spaces based upon the estimated number of patrons or customers to be served, but in any event not less than:

(i) For junk yards of less than 15,000 square feet—3 spaces

(ii) For junk yards more than 15,000 square feet, but less than 40,000 square feet—6 spaces

(iii) For junk yards more than 40,000 square feet—12 spaces

ORDER

AND Now, this 7th day of March, 1984, the order of the Court of Common Pleas of Adams County entered September 7, 1982 is reversed.