571 A.2d 1100

**ORWELL TOWNSHIP SUPERVISORS, Appellant,**

v.

**Philip JEWETT, Appellee.**

**COMMONWEALTH of Pennsylvania**

v.

**Philip JEWETT.**

**Appeal of ORWELL TOWNSHIP SUPERVISORS.**

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 1989.

Decided March 13, 1990.

Ray DePaolo, Griffin and Dawsey, P.C., Towanda, for appellant.

Jonathan P. Foster, Riffle, Foster & Hartley, Athens, for appellee.

Before DOYLE and PALLADINO, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

The Orwell Township Supervisors (Supervisors) appeal an order of the Court of Common Pleas of Bradford County which, *inter alia*, rendered the Orwell Township Junkyard and Refuse Ordinance (Ordinance) unconstitutional.[1]

On July 16, 1986, Philip Jewett was convicted for operating a junkyard without a license in violation of the Ordinance and was fined $3,277.50. Jewett appealed the summary conviction to the common pleas court. In addition, the Supervisors, in August 1986, filed a Petition for Injunctive Relief seeking to enjoin the operation of Jewett's junkyard. The summary appeal and the Petition for Injunctive Relief were consolidated before the common pleas court.[2] In its order, the common pleas court held the Ordinance unconstitutional and invalid, vacated the summary conviction and denied the Supervisors' request for injunctive relief. The Supervisors now appeal from that order.[3]

The Supervisors challenge the trial court's holding that the Ordinance was invalid and unconstitutional due to the

1. Orwell Township enacted the Ordinance in 1974 pursuant to Section 702, Clause LVIII of The Second Class Township Code (Code), Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. § 65758, added by Section 1 of the Act of March 11, 1959, P.L. 13, which authorizes townships of the second class to, *inter alia*, regulate junkyards and junk dealers.

2. It seems that although the consolidation of a summary appeal in a criminal matter and a civil suit in equity may not have been procedurally proper, no objections were raised by either party. This consolidation seems to have been both efficient and effective.

3. There has been no challenge to that part of the court's order vacating Jewett's summary conviction, docketed at No. 86-3253A in the common pleas court, and, therefore, it is not an issue before us.

indefinite and vague provisions of Section 5 of the Ordinance. That section reads:

### Issuance of License

Upon receipt of an application by the Board [of Supervisors], the Board shall issue a license or shall refuse to issue a license to the person applying therefore after an examination of the application and taking into consideration the *suitability of the property proposed to be used for the purposes of the license, the character of the properties located nearby, and the effect of the proposed use upon the Township, both economic and aesthetic.* In the event the Board shall issue a license, it may impose upon the license and the person applying therefore such terms and conditions in addition to the regulations herein contained adopted pursuant to this ordinance as may be deemed necessary to carry out the spirit and intent of this ordinance. (Emphasis added.)

The Supervisors concede that Section 5 of the Ordinance is vague standing alone; however, they contend that, when read in tandem with Section 12 of the Ordinance, the Ordinance is not so vague as to be rendered unconstitutional.[4]

**4.** Section 12 of the Ordinance provides:

*Regulations.* Every person licensed under this ordinance shall constantly maintain the licensed premises in accordance with any special provisions imposed by the Board and in the manner prescribed by this section and any subsequent regulations adopted by the Board:

(a) Such premises shall at all times be maintained so as not to constitute a nuisance or a menace to the health of the community or of residents nearby or a place for the breeding of rodents and vermin.

(b) No garbage or other organic waste shall be stored in such premises.

(c) Whenever any motor vehicle shall be received in such premises as junk, all gasoline and oil shall be drained and removed therefrom. Gasoline in an amount not exceeding ten (10) gallons may be stored above ground in said junk yards provided the same be placed in containers approved by the Board. All other gasoline which is kept in the premises shall be stored underground, which underground storage must be approved by the Board.

Jewett, on the other hand, argues that an ordinance which permits the Supervisors to refuse to issue a junkyard license *solely* for aesthetic reasons, or because of the economic effect on other properties in the Township, or because the property is not "suitable," is so vague and indefinite as to render the ordinance invalid. We are constrained to agree.

The exercise of the power of a township of the second class to regulate and license junkyards must bear a substantial relationship to the health, safety and general welfare of the public and does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property. *Medinger Appeal*, 377 Pa. 217, 104 A.2d 118 (1954).

The Supervisors cite *Cox v. New Sewickley Township*, 4 Pa.Commonwealth Ct. 28, 284 A.2d 829 (1971), to bolster their contention that aesthetic considerations *may* be considered when they bear a substantial relationship to the

(d) The manner of storage and arrangement of junk, and the drainage facilities of the premises shall be such as to prevent the accumulation of stagnant water upon the premises, and to facilitate access for firefighting purposes.

(e) All junk kept, stored, or arranged on the licensed premises shall at all times be kept, stored and arranged within the junk yard as described in the application for license hereunder, and as limited under paragraph (d) above.

(f) A person licensed under this ordinance shall not burn more than one motor vehicle or its equivalent at any one time. No oil, grease, tires, gasoline of other similar material that might be dangerous or tend to produce obnoxious smoke or odors shall be burned within a junk yard at any time. Burning of vehicles must be attended and controlled at all times.

(g) The premises to be licensed shall be set back a minimum distance of fifty (50) feet from the right-of-way lines on all streets or roads and a minimum distance of twenty-five (25) feet from all other property lines. The area between the set back line and the right-of-way line and all streets and roads and all other property lines shall be at all times, kept clear and vacant.

(h) When the Board shall deem it necessary and desirable, the premises to be licensed shall at the set back lines be enclosed by a fence of type and style to be determined by the Board or by evergreen screen plantings, or both. The Board may set forth the fence and planting requirements at the time of the issuance of a license or at the time of renewal or transfer of a license.

public health, safety and welfare. We agree with that as a statement of the applicable law. *Cox* is distinguishable, however, because in *Cox*, the appellants challenged the constitutionality of specific regulations found in a junkyard ordinance. The court held that each of the challenged regulations, including those dealing with set-back requirements, fencing, stacking, and the planting of shrubbery, bore a substantial relationship to the public health, safety and general welfare and thus set forth a legitimate exercise of the police power of the township.

In the case *sub judice*, Jewett does not challenge the regulations found in Section 12 of the Ordinance; rather he challenges, *inter alia*, the language in Section 5 of the Ordinance which gives the Supervisors unlimited power to issue licenses on the basis of aesthetic reasons alone.

The Court of Common Pleas of Lehigh County dealt with a junkyard ordinance having identical language to the Ordinance in the case *sub judice*. In *Township of Upper Milford v. Beck*, 32 Lehigh L.J. 420 (C.P.Pa.1967), in an opinion written by Judge Weiand, the court determined that that junkyard ordinance imposed regulations which went far beyond reasonable legal parameters and bore no substantial relationship to the health, safety and general welfare of the public. The succinct language of Judge Weiand in *Beck* is both cogent and controlling:

A close scrutiny of the provisions of this Ordinance and an examination of the manner in which it will affect defendant's land make it abundantly clear that the attempted regulation of his junk yard goes far beyond that which is reasonable and invades an area which bears no substantial relation to the health, safety and general welfare of the public. An applicant must agree to comply with each one of the stated regulations and also any regulations which the township supervisors may determine to impose in the future. Even after he does this, however, and even after he has paid the license fee of $200.00, he cannot be certain that a license will be issued to him. The board of township supervisors may refuse to

issue the license for aesthetic reasons or because of the economic effect of a junk yard on other real estate in the township, or because, in its opinion, the property isn't 'suitable.'

These standards for the issuance or refusal of a license are too vague and indefinite. They are so vague and indefinite that they cannot and do not afford a sufficient guide to insure uniformity in the application of the licensing provisions. Nowhere else in the Ordinance is there any provision to correct this indefiniteness and supply guides to a uniform issuance of licenses. Nowhere is there anything to assist the township supervisors in determining which land is 'suitable' or when the 'character' of neighboring property is such as to prohibit the issuance of a license. What standard can possibly be applied to determine which junk yards are aesthetically permissible? Aesthetic effect must depend on each individual's artistic taste, and more often than not opinions will differ. Indeed, it is difficult to imagine more variable, uncertain, fluctuating standards than those set forth in this Ordinance. Further, as already noted, a junk yard may not be prohibited either for aesthetic reasons or to conserve the value of other property in the community. *Good Fellowship Ambulance Club's Appeal,* supra [406 Pa. 465, 178 A.2d 578 (1962) ]; *Medinger Appeal,* supra; *Miller v. Seaman,* 137 Pa. Superior Ct. 24, 31 [8 A.2d 415 (1939) ]; *Commonwealth v. Crash,* supra; *Springdale Borough v. Chinchilla,* 13 D. & C. 2d 539, 542.

Similarly, the Ordinance at hand encourages arbitrary and erratic issuance of junkyard licenses. Nothing in the Ordinance assists the township supervisors in determining whether the property proposed to be used is "suitable" or whether the proposed use would affect the "character" of the nearby property. Further, the Ordinance does not describe what type of economic and aesthetic effect to the township would prohibit the issuance of a license.

It is a fundamental rule that:

an ordinance must establish a standard to operate uni-
formly and govern its administration and enforcement in
all cases, and that an ordinance is invalid where it leaves
its interpretation, administration or enforcement to the
unbridled or ungoverned discretion, caprice or arbitrary
action of the municipal legislative body or of administra-
tive bodies or officials, is fully applicable to zoning ordi-
nances. In other words, zoning ordinances and regula-
tions should establish uniform rules to guide administra-
tive officers in applying them. The rule merges with that
of definiteness and certainty; zoning restrictions must be
clear as a rule of law and not left to proof.

*Archbishop O'Hara's Appeal*, 389 Pa. 35, 48, 131 A.2d 587,
593 (1957) (quoting 8 McQuillin, Municipal Corporations
§ 25.62, at 109 (8th ed.)).

■ Under the provisions of the Ordinance at hand, the
applicant could comply with all the specific requirements
under Section 12, and yet be denied the permit solely for
aesthetic reasons under Section 5. If we were to allow
supervisors to deny a permit for aesthetic reasons only, we
would encourage them to act arbitrarily in the performance
of their duties.

Our Supreme Court did uphold the constitutionality of a
junkyard ordinance in *Price v. Smith*, 416 Pa. 560, 207 A.2d
887 (1965). Although neither counsel has called our atten-
tion to *Price*, we believe an analysis of the case is necessary
since it must be distinguished from the case *sub judice*.
First, neither the majority opinion nor the dissent in *Price*
recite the entire section or sections of the ordinance being
discussed. Moreover, while the majority in *Price* stated
"nor were the standards therein set forth [in the ordinance]
so vague and indefinite that uniform application could not
be assured," *id.*, 416 Pa. at 561, 207 A.2d at 888, the
majority failed to identify which standards were not vague
and indefinite. No hint was given as to the specific lan-
guage the Court was referring to in the ordinance, and
therefore, which standards the majority referred to can only
be a matter of conjecture. It is unclear whether the Court

was referring to the standards set forth for the regulation of junkyards or to those for the issuance of permits when it held that the "standards" were not vague and indefinite.

In his dissenting opinion in *Price*, Justice Eagen wrote that he would have found the section of the ordinance dealing with the issuance of permits to be "too vague and indefinite" and therefore, he would have found the ordinance to be unconstitutional as applied to the appellant's land. Although Justice Eagen's dissent discussed the permit section of the ordinance, we are not certain whether the majority based its decision on that section. We are thus left without language with which to compare this case and are forced to avoid the application of an unclear decision.

The ordinance language now under review permits the supervisors to deny a license on aesthetic considerations alone. Because such language is unconstitutional under *Archbishop O'Hara's Appeal* and *Medinger Appeal*, we affirm the common pleas court.

Affirmed.

## ORDER

NOW, March 13, 1990, the order of the Court of Common Pleas of Bradford County in the above-captioned matter is hereby affirmed.

PALLADINO, J., concurs in the result only.