## Commonwealth v. Boehlmer

*W. Robert Landis*, for Commonwealth.
*Ralph W. Kent*, for defendant.

SUGERMAN, *J.*, December 23, 1976 — Appellant, George Bochler, has appealed his convictions of two summary offenses under an ordinance of the Borough of Malvern. The ordinance in question, enacted April 4, 1941, and thereafter from time to time amended, provides, in pertinent part:

"Section 1c. From and after the date of this Ordinance, it shall be unlawful for any person, persons, firms or corporation to dump, store or maintain any abandoned, wrecked, junked or old and unregistered motor vehicles, or the stripped chassis or body of old or stripped motor vehicles, upon any private property or premises within the Borough of Malvern except for the purposes of the immediate dismantling thereof for the procure-

ment of individual and separate parts; and in the event of such storage or maintenance for the purposes of immediate dismantling, no chassis or body of such motor vehicle, stripped or whole, shall be permitted to remain upon any premises for any period in excess of thirty (30) days."

By later amendment, the Borough Council of Malvern authorized its police department to issue permits extending the 30-day period for an additional 30 days ". . . only upon submission of such proof as may be reasonably necessary to show cause for the issuance of such permit. . ."[1]

From the evidence, it appears that on the dates of the alleged violations, three or four Volvo automobiles, owned by appellant, were "parked" in the yard of appellant's residence in the Borough of Malvern. The vehicles bore neither current inspection certificates nor registration plates. The vehicles, all with deflated tires, were in various states of disrepair and disassembly. At least one and perhaps two of the vehicles were brought upon appellant's premises four or five years prior to the date of the first violation.

From time to time, appellant performs work on the vehicles when he is able to acquire Volvo parts, and he intends to sell the vehicles for profit when repaired. One of the vehicles on appellant's premises at the date of the first violation has since been repaired and sold.

Appellant, in addition to his assertion that the offending vehicles are not in violation of, or encompassed by, the ordinance, also challenges the ordinance as beyond the power of the borough to

---

1. As the parties have not raised the issue, we do not treat the subject of whether such delegation is lawful. See Dussia v. Barger, 466 Pa. 152, 351 A.2d 667 (1976).

adopt under the appropriate enabling legislation. We initially examine the latter contention.

The Borough of Malvern, a political subdivision of the Commonwealth, may exercise only those powers granted to it by the legislature, and the bulk of those powers are conferred by The Borough Code[2]. The borough asserts that the authority to adopt the ordinance at bar derives from either section 1202(10) or 1202(29) of The Borough Code, 53 P.S. §§46202(10), (29).

Both such sections set forth certain specific powers and provide:

"[§1202] (10) *Accumulations of garbage and other refuse material.* To prohibit accumulations of garbage or other refuse material upon private property and to provide for the removal of prohibited accumulations of garbage or other refuse material.

" . . .

"[1202] (29) *Junk yards.* To prohibit, regulate and license the establishment and maintenance of junk yards, salvage yards and other places used and maintained for the collection, storage and disposal of used or secondhand goods and materials."

We also note, independently of counsel, section 1202(5) of The Borough Code, 53 P.S. §46202(5), providing:

"[§1202] (5) *Nuisances and dangerous structures.* To prohibit and remove any nuisance, including but not limited to . . . the storage of abandoned or junked automoiles . . ."

At the outset, then, it is at least arguable that the subject of abandoned or junked automobiles may

---

2. Act of February 1, 1966, P.L. (1965) 1636 (No. 581), §102, *et seq.*, as amended, 53 P.S. §45101 *et seq.*

be included within the language of all *three* such subsections of The Borough Code. Closer examination, however, and application of the rules of statutory construction and relevant appellate authority dictate a contrary conclusion, and our analysis leads us to hold that the ordinance must, of necessity, be based upon subsection (5).

We note first that the words "other refuse material," in subsection (10), and the words "used or secondhand goods and materials," in subsection (29), are general provisions, whereas the phrase, "abandoned or junked automobiles" as used in subsection (5), is a particular provision. When a general provision in a statute is in conflict with a special provision in the same statute, the two shall be construed, if possible, so that effect may be given to both: Statutory Construction Act of November 25, 1970, P.L. 707 (No. 230), added December 6, 1972, P.L. 1339 (No. 290), sec. 3, 1 C.P.S.A. §1933. We may, of course, give effect to subsections (10) and (29) on the one hand, and to subsection (5) on the other by inferring that the subject of abandoned or junked automobiles is specifically treated only in subsection (5), and thereby excluded from subsections (10) and (29). If such construction is offensive to some, the obstacle is easily surmounted by application of the rule that if a conflict between the two statutory provisions is unreconcilable, the special shall prevail over the general, and the special shall be construed as an exception to the general: Statutory Construction Act, sec. 3, 1 C.P.S.A. §1933.

While the borough does not directly assert that appellant's premises are a "junk yard" as that term is used in subsection (29), it does suggest that the ordinance at bar rests upon the authority

granted boroughs under that subsection to prohibit or regulate junk yards.

An examination of the language of subsection (29) reveals a clear legislative intention to permit the regulation of commercial facilities or businesses commonly called junk yards, and places "used and maintained for the collection, storage and disposal of used or secondhand goods and materials." While such regulation is, of course, entirely permissible (Price v. Smith, 416 Pa. 560, 207 A.2d 887 (1965)), the ordinance at bar does not purport to regulate or prohibit such facilities. The suggestion that subsection (29) authorizes enactment of the ordinance at bar appears to be little more than an afterthought or makeweight, and such view is reinforced when one reads the title of the ordinance before us.

Significantly, the ordinance is entitled "An Ordinance for the prevention of dumping, discharging, keeping an accumulation of rubbish and other waste materials, providing for the removal of the same . . .," language closely tracking the language of subsection (10). The similarity we believe expresses a clear intention by the borough to base the regulation upon subsection (10), rather than subsection (29).

We have also read with interest Commonwealth v. Keiser, 68 D. & C. 2d 418 (1974), similar on its facts to the case at hand. In Keiser, a second class township enacted an ordinance which, after defining the words "abandoned motor vehicle" and "junked motor vehicle," provided simply:

"It shall be unlawful for any person, partnership, firm, association or corporation to park or store on any street, or in the open, on public or private property within Windsor Township, York

County, Pennsylvania any 'abandoned' motor vehicles or 'junked' motor vehicle, or parts thereof, for a period longer than 15 days."

No specific power conferred upon the township by the Second Class Township Code was referred to in the ordinance as authority for its enactment. The court, however, found that the ordinance was adopted pursuant to the specific power granted by the code to prohibit nuisances, a section similar to subsection (5) of The Borough Code.

In brief summary, we find that the rules of construction necessitate the conclusion that the specific subject of abandoned or junked automobiles can be regulated only under subsection (5), as subsection (29) permits the regulation of a commercial or business facility called a "junk yard," only, and subsection (10) limits the borough's authority to the prohibition of accumulations of garbage and other refuse materials, excepting, however, abandoned or junked automobiles.

Even if we were to conclude that subsection (29), permitting the borough to regulate junk yards, authorizes the enactment of the ordinance at bar, the borough could not here prevail. Bearing in mind that words and phrases are to be construed according to their common and approved usage (Statutory Construction Act, section 3, 1 C.P.S.A. 1903(a)), we are not prepared to say on this record that appellant's residence and its curtilage have been converted to a junk yard as the result of his storing three or four automobiles thereat, thus permitting the borough to exercise the power conferred by subsection (29). There is not the slightest evidence that suggests appellant's premises are such a facility.

Deciding, as we have, that the authority in a

borough to regulate abandoned or junked automobiles is found in subsection (5) of The Borough Code, we must next determine whether the borough may flatly prohibit the storage of such vehicles as the ordinance at bar purports to do.

It is clear in Pennsylvania that a municipality may not constitutionally declare the storage of abandoned or junked automobiles to be nuisances per se under the authority of language similar to that in subsection (5): Commonwealth v. Hanzlick, 400 Pa. 134, 161 A.2d 340 (1960) (second class township); Kadash v. City of Williamsport, 19 Pa. Commonwealth Ct. 643, 340 A.2d 617 (1975) (third class city); Borough of Macungie v. Hoch, 34 Lehigh L. J. 99 (1970), affirmed per curiam 1 Pa. Commonwealth Ct. 573, 276 A.2d 853 (1971) (borough); Commonwealth v. Christopher, 184 Pa. Superior Ct. 205, 132 A.2d 714 (1957) (second class township).

Before a nuisance, including the storage of abandoned or junked automobiles, may be prohibited, such activity must be found to constitute a nuisance in fact, and a case-by-case approach is mandated: Commonwealth v. Hanzlick, supra. Logic demands the conclusion that whether the ordinance declares the storage of such vehicles to be nuisances per se, and thus unlawful, or simply declares such storage to be unlawful without reference to whether it is a nuisance per se, such activity must first be found to constitute a nuisance in fact[3].

---

3. As it is thus clear that a municipality cannot prohibit the storage of abandoned or junked automobiles by declaring them to be nuisances per se under the authority granted by subsection (5), how, then, can it be said that a municipality may prohibit the storage of such automobiles by the simple

Turning again to Commonwealth v. Keiser, supra, the court, after finding the ordinance to be based on subsection (5), said pertinently, at page 420:

"This language [subsection (5)] has been construed by our Supreme Court in Commonwealth v. Hanzlick, 400 Pa. 134 (1960) as giving the township the right to prohibit a nuisance in fact which in a given case might include the storage of abandoned or junked automobiles. The court further held, however, that the legislature did not declare such storage as a nuisance per se and did not give the township the power to do so. The ordinance in Hanzlick which flatly prohibited the storage of abandoned or junked automobiles on either public or private property without regard to whether such storage was, or was not, a nuisance in fact was, therefore, held invalid. The same result upon the same reasoning has been reached with respect to boroughs. . . .

"By the ordinance before us, Windsor Township seeks to accomplish the same result by total prohibition without expressly declaring the prohibited conduct a nuisance per se. *Such a flat prohibition is the legal equivalent of a declaration of nuisance per se and equally beyond the power of the township* . . . .Consequently, the township cannot flatly prohibit defendant from this otherwise legitimate use of his private property, without pro-

---

expedient of labeling them "other refuse materials," under subsection (10), or calling the place where such vehicles are stored, without further proof, a "junk yard" or "other places used and maintained," as such, under subsection (29)? Such a result would be absurd, and we must presume that the legislature does not intend an absurd or unreasonable result: Statutory Construction Act, sec. 3, 1 Pa. C.S. 1922 (1).

ving a nuisance in fact. Not having done so, defendant must be discharged.'' (Emphasis supplied.)

At bar, the borough merely proved that the offending vehicles were stored upon appellant's premises, and made no effort to introduce evidence bearing upon the question of whether such storage constituted a nuisance in fact. Inasmuch as the borough must prove a nuisance in fact before it may prohibit the storage of abandoned or junked automobiles under subsection (5), it cannot here prevail.

Although we find that the borough has exceeded the authority delegated to it by the enabling legislation, we recognize as well that we must endeavor if we can to adopt such interpretation of the borough's ordinance as will bring it within constitutional parameters: Kadash v. City of Williamsport, supra. The ordinance at bar can be reasonably interpreted if the borough is required to prove on a case-by-case basis that a nuisance in fact exists by reason of the storage of junked or abandoned automobiles. As we have noted, this the borough failed to do, resting instead upon mere proof of the existence of the vehicles on appellant's property.

Finally, we would be remiss if we failed to note the recent case of Township of Vanport v. Brobeck, 22 Pa. Commonwealth Ct. 523, 349 A.2d 523 (1975), in which the Commonwealth Court found valid a prohibition against the use of land ''as a storage area for junk automobiles, appliances or the storage or collection of any other miscellaneous items . . .'' as contained in a zoning ordinance, saying as it did, at page 525:

''With regard to the necessity that a nuisance be

found, we point out the obvious fact that the police power of the Commonwealth empowers the government to regulate land use in a myriad of ways and our reports contain literally hundreds of cases where state and municipal governments have validly acted to protect the public health, safety and welfare in situations where common law nuisances did not exist. Osborne v. Commonwealth of Pennsylvania, Township of Wells, 15 Pa. Com. Ct. 325, 325 A.2d 671 (1974). Zoning ordinances are only one example."

We interpret such language and the holding of the case itself narrowly, as affirming the long-recognized power of a municipality to adopt zoning legislation and thereby regulate land use. Although the opinion of Judge Kramer recites no underlying facts, it would appear that the offender in Brobeck was in the business of storing junk automobiles as was appellant in Osborne, cited in support of the language quoted above.

While, of course, there can be no rational quarrel with the holding in Brobeck, it has no application at bar. Nor are we called upon to say that, even if the language of the ordinance at bar were incorporated into a zoning ordinance and applied to the instant appellant on these facts, the borough would prevail under the authority of Brobeck.

Finding as we do that the borough may not apply the ordinance at bar to appellant unless it first establishes a nuisance in fact, we need not reach appellant's contention that the automobiles upon his premises were neither "abandoned" or "junked."

## ORDER

And now, to, December 23, 1976, after hearing

de novo, defendant is found not guilty of violating section 1(c) of Ordinance No. 162 of the Borough of Malvern, as amended by Ordinance No. 225.