SAINT THOMAS TOWNSHIP BOARD
OF SUPERVISORS

v.

James W. WYCKO, an individual,
Appellant.

Commonwealth Court of Pennsylvania.

Argued April 12, 1999.

Decided Aug. 31, 2000.

Larry L. Miller, Duncannon, for appellant.

John M. Lisko, Waynesboro, for appellee.

Before: DOYLE, President Judge, PELLEGRINI, J., and NARICK, Senior Judge.

DOYLE, President Judge.

James Wycko appeals from an order of the Court of Common Pleas of Franklin County which declared the use of his property to be a public nuisance and ordered him to pay the counsel fees of the Saint Thomas Township Board of Supervisors (Township or Board).

Wycko purchased his property, which is located at 7074 Lincoln Way West in Saint Thomas Township, Franklin County, Pennsylvania, on July 12, 1987. At that time, the property had a two-story house and a garage on it. In July of 1992, the Township enacted a junkyard and nuisance ordinance, Ordinance 98 (Ordinance), which defined the term "nuisance," identified what acts would constitute a nuisance and declared such nuisances to be illegal.[1] Specifically, the Ordinance provides that Township residents may not keep scraps, such as scrap metal, or abandoned or junk vehicles on their property for an extended period of time.

Beginning in 1992, Robert Lake, a member of the Board, received complaints from Wycko's neighbors regarding junked cars, scattered scrap metal and car parts being stored on Wycko's property. As a result of these complaints, Lake inspected the property and found car parts scattered on the property, as well as in the building on the property, and no signs that anyone was living on the property. The Township sent a written cease and desist order to Wycko advising him that he was in violation of the Ordinance. Later in 1992, Wycko and Lake negotiated an amicable settlement whereby Wycko agreed to erect a screened fence that would screen the cars from his neighbors' view. Wycko erected the screen, but it apparently did not screen off all of the cars.

In both 1994 and 1995, Lake received numerous additional complaints about Wycko's property, and, as a result, the Township issued another cease and desist order on January 10, 1995, which advised Wycko that he was in violation of the junkyard and nuisance ordinance. In February of 1995, Lake again viewed Wycko's property and this time observed that only three of the thirteen cars on the property had valid inspection stickers on them. On June 19, 1995, at its regular meeting, the Township authorized a suit to enjoin Wycko's violation of the Ordinance. On February 21, 1996, the Township filed its initial complaint, alleging that Wycko's use of his property violated the Township's subdivision ordinance, as well as the junkyard ordinance. After receiving Wycko's third amended answer to the complaint, the Common Pleas Court held a non-jury trial commencing on January 22, 1998.

During the trial, the Township offered the testimony of Lake, who recounted the above events. In addition, the Township also presented the testimony of Rodney Appleby, who is one of Wycko's neighbors. Appleby testified that Wycko generally kept approximately 30 cars on his property at one time and, sometimes, he had as many as 36. Some of the cars had valid inspection stickers on them, and others did not. Appleby also noted that, at one point in time when Wycko had the cars on his property, Appleby found a rat in his house, although he noted that he never saw any rats on Wycko's property. Appleby characterized the house on Wycko's property as a warehouse for various car parts.

In addition, the Township presented the testimony of Robert Estep, whose parents

1. Section 3 of the Ordinance also declares similar acts, such as permitting the accumulation of scrap metal or junked or abandoned vehicles on private property, illegal, regardless of their classification as nuisances.

live next door to Wycko's property on the other side. Estep had occasion to go into Wycko's house, and he opined that the inside of it had car parts strewn all over it, and he did not believe that the second floor of the house was habitable. He further explained that the house, to his knowledge, did not have electricity or sewer access. In addition, he noted that Wycko had many cars on his property in various conditions; some were in good working condition, others needed some paint, and he did not believe that others could be safely operated. Estep conceded that he did not know whether any or all of the cars had valid inspection stickers.

Finally, the Township presented the testimony of Mary Clites, the Township Secretary. She identified several pictures that she had recently taken of Wycko's property, each of which illustrated the accumulation of cars and car parts on Wycko's property. She testified that the property and the structures on it have deteriorated since Wycko purchased it.

In response, Wycko testified concerning his property. He explained that he initially rented the house to defray his monthly mortgage payments. Because some of his tenants refused to pay and the house needed to be refurbished, he decided to rent out the second floor as an apartment while utilizing the first floor and basement for the storage of parts. He indicated, however, that the house does have electricity and is hooked up to the sewer system. He stated that he generally keeps parts on the first floor and porch that will be utilized immediately or, at least, more frequently, while the basement is for storage of parts that are only used occasionally.

In addition, he explained that he does keep cars on his property, but these cars generally are in running order and are being fixed up for sale. He explained that, after he fixes up a vehicle, he displays it in an area in front of his house for potential buyers who may drive by and see it. He acknowledged that he does own cars that he uses solely for parts, but those cars are kept in a salvage yard in another township. In addition, he stated that he does store car parts on his property, some of which were on his porch. As noted above, these parts were ones that he anticipated using in the near future. Wycko admitted that, in 1992, he and the Township agreed that he would keep only cars with valid inspection stickers and registrations on his property. He indicated that he abided by this agreement until the Township filed suit against him based upon the junkyard and nuisance ordinance. Finally, Wycko stated that he starts up and moves the vehicles on his property so that he can mow the grass under and around them.

On March 16, 1998, the Common Pleas Court issued an opinion and decree nisi. The Common Pleas Court found no violation of the subdivision ordinance. As to the junkyard and nuisance ordinance, Common Pleas concluded that Wycko was not subject to the Ordinance because his "business" was in operation before the enactment of the Ordinance and, therefore, constituted a preexisting nonconforming use. The Common Pleas Court went on to hold, however, that Wycko's use of his property did constitute a public nuisance, and, on that basis, Common Pleas ordered Wycko to remove the car parts from his lot and permitted him to keep only three cars on his property for the purposes of repairing them. Common Pleas also ordered Wycko to pay the Township's legal fees. This appeal followed.

On appeal, Wycko argues that the Common Pleas Court erred by granting the Township relief based upon a theory that was not contained in its original complaint, i.e., a public nuisance, and Wycko also argues that Common Pleas erred by ordering him to pay the Township's legal costs.

■ Prior to turning to the merits of the appeal, we feel compelled to point out our fundamental disagreement with the conclusion of Common Pleas that Wycko was not subject to the Ordinance because his use of the property predated the enact-

ment of the Ordinance. The concept of a preexisting nonconforming use is one that is unique to the area of zoning. *See Lantos v. Zoning Hearing Board of Haverford Township,* 153 Pa.Cmwlth. 591, 621 A.2d 1208, 1210 (1993) ("A non-conforming use is an activity or structure predating the relevant zoning restrictions."). The reason for this distinction is that, although the authority of a local agency to enact both zoning and junkyard ordinances derives from its police power, the focus of zoning ordinances is on the regulation of various tracts throughout a municipality, *Mt. Joy Township, Adams County v. Davies Used Auto Parts,* 80 Pa.Cmwlth. 633, 472 A.2d 1172 (1984), while the focus of junkyard and similar ordinances is on the health, safety and welfare of the general public. *Price v. Smith,* 416 Pa. 560, 207 A.2d 887 (1965). Accordingly, we believe that Wycko was subject to the Ordinance. Of course, if the Township established a violation of section one of the Ordinance, it would be entitled to injunctive relief. *See Little Britain v. Lancaster County Turf Products, Inc.,* 146 Pa.Cmwlth. 211, 604 A.2d 1225 (1992); *Gateway Motels, Inc. v. Municipality of Monroeville,* 106 Pa. Cmwlth. 42, 525 A.2d 478 (1987), *petition for allowance of appeal denied,* 518 Pa. 621, 541 A.2d 748 (1988).

■ The Township, however, did not file a cross appeal on the issue of the applicability of the Ordinance, presumably because it received the relief it sought. We would note, however, that, although a party receives the relief it sought, albeit on an alternative basis, that fact alone would not preclude the successful party from filing a protective cross appeal on an issue which the lower tribunal decided against it, and a party choosing to proceed in such a manner, *i.e.,* not filing a protective cross appeal, does so at the risk that the issue on which it prevailed below will be reversed. Moreover, we note that if only the party aggrieved by the relief granted or denied

below had the option to file an appeal, there would rarely, if ever, be a cross-appeal, thus obviating the need for those sections of our rules of appellate procedure which permit such appeals to be taken. With this admonition, we now turn to the merits of Wycko's appeal.

Wycko argues that Common Pleas erroneously granted the Township relief on a basis that was not in the Township's pleadings. Specifically, Wycko argues that the Township pled and proceeded exclusively on the theory that Wycko violated the Ordinance. In response, the Township argues that it is not required to identify the theory on which it is proceeding in its pleadings and that it did request injunctive relief in this case, which Common Pleas granted. Accordingly, the Township posits, the Common Pleas Court did not grant it relief outside what the Township had requested in its complaint.

■ It is undisputed that Pennsylvania is a fact-pleading state. *Clark v. Southeastern Pennsylvania Transportation Authority,* 691 A.2d 988 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 550 Pa. 686, 704 A.2d 640 (1997). As such:

a complaint must apprise the defendant of the nature and extent of the plaintiff's claim so that the defendant has notice of what the plaintiff intends to prove at trial and may prepare to meet such proof with his own evidence.

*Id.* at 991, n. 6 (citation omitted). Although the Township acknowledges the above, it nonetheless asserts the complaint need only state the material facts upon which a cause of action is based to comply with this requirement. Moreover, the Township asserts that, under our holding in *McClellan v. Commonwealth of Pennsylvania,* 92 Pa.Cmwlth. 643, 499 A.2d 1150 (1985), it was required only to establish that Wycko's use of his property constituted a nuisance in fact in order to establish a violation of the Ordinance.[2]

2. We reject this argument as it pertains to the alleged violations of Sections 3. A(2), 3. B and

3. C of the Ordinance because the preamble

■ Although we agree with the Township in part that it was required to establish a nuisance in fact in order to prevail, we cannot agree that the Ordinance required the Township to establish a public nuisance; rather, it merely required the Township to establish a nuisance as defined in the Ordinance. Under the Ordinance, a "nuisance" is:

> [T]he unreasonable, unwarrantable, or unlawful use of public or private property which causes injury, damage, hurt, inconvenience, annoyance or discomfort to any person or resident in the legitimate enjoyment of his reasonable rights of person or property.

(Ordinance at p. 2.) Conversely, "a public nuisance is an unreasonable interference with a right common to the general public." *Restatement (Second) of Torts*, § 821B (1977 Main Vol.). The definition of a public nuisance is, at best, imprecise, and it certainly could include the definition of nuisance contained in the Ordinance. We do not believe, however, that the two definitions are so closely related as to provide Wycko with notice that he should prepare to defend against both claims. In essence, the Township argues that we should view its complaint as implicitly including the public nuisance claim. However, as our Supreme Court pointed out in *Namy v. Black*, 367 Pa. 523, 80 A.2d 744 (1951), "[n]either unproved allegations nor proof of matters not alleged can be made the basis for equitable relief." *Id.* at 526, 80 A.2d at 746.

Moreover, examining the Township's complaint, we find it significant that the verbiage in the complaint tracks the language of the Ordinance, at some points quoting passages from the Ordinance verbatim. *Compare* Complaint at 7, Paragraph 25 ("The area on the property is . . . neither sheltered by a building nor enclosed by an evergreen or solid fence of sufficient height and density to totally obscure the junked vehicles . . . from the view of adjoining property owners and travelers on adjoining highways or streets.") *with* Ordinance at Section 3.C (stating that it is a violation of the Ordinance to store or collect vehicles "which are neither sheltered by a building nor enclosed behind an evergreen or solid fence of sufficient height and density to totally obscure the vehicle(s) from the view of adjoining property owners and travelers on adjoining highways or streets."). (Ordinance at pp. 2, 4.) Other portions of the Ordinance are paraphrased in the complaint.

In addition, absent from the complaint are allegations that foul or offensive smells emanated from the property, that there were high weeds on the property or that the property attracted vermin, although, admittedly, Appleby testified that he saw one rat on his property, but saw none on Wycko's property and did not testify that the rat came from Wycko's property. The complaint does not even aver that residents complained about the state of Wycko's property, although, again, clearly the Township produced evidence of such complaints. Such averments might at least have provided Wycko with some notice that the Township was proceeding on the alternative ground of a public nuisance, and that he should prepare to rebut the same.

■ Accordingly, we conclude that the Township's pleadings did not allege facts that would establish a public nuisance and,

---

to Section 3 of the Ordinance provides in relevant part as follows:

> Section 3. *Storing or Accumulating Trash, Garbage or Junk Material or Abandoned or Junked Vehicles* : The following act or activities, **without regard to their classification as 'nuisances,'** are herby [sic] declared illegal:

(Ordinance at p. 3.) (Emphasis added.) Thus, it is clear by the explicit language of the Ordinance that, to prevail on a violation of Section 3, the Township was not required to establish that Wycko's use constituted a nuisance in fact and, therefore, Wycko did not have adequate notice of the common law nuisance claim as it relates to this section of the ordinance.

thus, did not provide Wycko with adequate notice of this claim. Therefore, the Common Pleas Court erred by granting the Township relief based on a public nuisance theory.

Next, Wycko argues that Common Pleas erred by assessing counsel fees against him and that counsel fees should have been assessed against the Township because its conduct in bringing the equity action against Wycko was arbitrary, capricious and in bad faith. It is well settled law that a trial court may only impose sanctions under the Judicial Code when it makes a specific finding that a' party's conduct was dilatory, obdurate or vexatious. *Township of South Strabane v. Piecknick*, 546 Pa. 551, 686 A.2d 1297 (1996). In the present case, the Court of Common Pleas did not make a finding that either party's actions were dilatory, obdurate or vexatious, and, accordingly, *any* award of counsel fees was inappropriate.

Order reversed.[3]

### ORDER

**NOW**, August 31, 2000, the order of the Court of Common Pleas of Franklin County in the above-captioned matter is hereby reversed.

---

**3.** We cannot help but further observe that, if a common law public nuisance exists on Wycko's property, as argued by the Township, it probably is a continuing public nuisance which could be the subject of proper further legal action.