COMMONWEALTH of Pennsylvania, Thomas W. Corbett, Jr., Attorney General, Plaintiff,

v.

Steven Paul PARISI, individually and d/b/a P&K Developers, LLC, and P&K Developers, and Eagle Valley Homes, Inc., and Eagle Valley Homes North Incorporated and Nations 1st Mortgage Co., LLC; and Donald G. Kishbaugh, individually and d/b/a P&K Developers, Inc., P&K Developers, LLC, and P&K Developers, and Nations 1st Mortgage Co., LLC; and Mobile Developing Company; and Lisa Marie Gibson, individually and d/b/a Lisa Marie's Appraisal Service, Inc.; and Rose Purdue, individually and d/b/a Nations 1st Mortgage Co., LLC; and Stanley L. (Stan) Cheslock, individually and NEPA Appraisal Services, and Wilkins & Associates Real Estate, Inc.; Kathleen Spitzfaden, individually and NEPA Appraisal Services, and Wilkins and Associates Real Estate, Inc.; and Jenny Centrella; and Anthony T. Novitsky, individually and d/b/a Pocono Northeast Appraisal Company; and Lawrence Cachia, Defendants.

No. 612 M.D. 2004.

Commonwealth Court of Pennsylvania.

Submitted March 1, 2005.
Decided April 5, 2005.

James M. Sysko, Deputy Attorney General, Scranton, for plaintiff.

David A. Martino, Brodheadsville, for defendant Lisa Marie Gibson.

Michael B. Kaspszyk, Mt. Pocono, for defendant Stan Cheslock.

Brandon R. Reish, Stroudsburg, for defendants Kathleen Spitzfaden and NEPA Appraisal Services.

John J. Hatzell, Jr., Philadelphia, for defendant Jenny Centrella.

BEFORE: FRIEDMAN, Judge, and COHN JUBELIRER, Judge, and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

Before the Court are the preliminary objections filed on behalf of Lisa Marie Gibson, d/b/a Lisa Marie's Appraisal Services, Stanley Cheslock, Kathleen Spitzfaden, NEPA Appraisal Services (NEPA) and Jenny Centrella (collectively, Objecting Defendants) to the complaint in

equity filed by the Attorney General of the Commonwealth of Pennsylvania,[1] alleging that all Defendants[2] violated the Unfair Trade Practices and Consumer Protection Law (Law).[3] For the reasons that follow, we grant the preliminary objections in part, deny in part, and order the Commonwealth to file a more specific pleading as directed below.[4]

On August 25, 2004, the Commonwealth filed a complaint in equity against all Defendants alleging various violations of the Law, the Truth in Lending Act[5] and Regulation Z.[6] Specifically, the Commonwealth alleged that all Defendants' actions during the construction, appraisal, sale and mortgage of land and residential homes were in violation of Sections 2(4)(ii), (iii), (v), (vii), (viii), (ix), (xi), (xviii) and (xxi) of the Law.[7]

1. At the time that the Commonwealth's complaint was filed, Gerald Pappert was serving as Attorney General. He was succeeded by Thomas Corbett, Jr., who was elected Attorney General in November 2004.

2. Remaining Defendants are: Steven Paul Parisi, individually and d/b/a P & K Developers, LLC, P & K Developers and Eagle Valley Homes, Inc., Eagle Valley Homes North Inc., and Nations 1st Mortgage Co., LLC; and Donald G. Kishbaugh, individually and d/b/a P & K Developers, Inc., P & K Developers, LLC, P & K Developers, Nations 1st Mortgage Co., LLC; Mobile Developing Company; Rose Purdue, individually and d/b/a Nations 1st Mortgage Co., LLC; Anthony T. Novitsky, individually and d/b/a Pocono Northeast Appraisal Company; and Lawrence Cachia. Remaining Defendants have not filed preliminary objections to the complaint. As to Defendant Wilkins & Associates Real Estate, the Commonwealth has indicated that NEPA is a fictitious name registered to Wilkins & Associates. Wilkins & Associates sold NEPA to Kathleen Spitzfaden, who failed to change the fictitious name registry. Thus, the Commonwealth has discontinued its allegations against Wilkins & Associates. *See Commonwealth v. Parisi, et. al* (Pa.Cmwlth. No. 612 M.D.2004, filed October 19, 2004)(*Parisi I*).

3. Act of December 17, 1968, P.L. 1224, *as amended,* 73 P.S. §§ 201-1-201-9.3.

4. When reviewing preliminary objections in cases filed in our original jurisdiction, we consider as true all well-pleaded facts that are material and relevant. *Pennsylvania Tpk. Comm'n v. Hafer,* 142 Pa.Cmwlth. 502, 597 A.2d 754 (1991). Preliminary objections should be sustained only when they are clear and free from doubt. *Zinc Corp. of Am. v. Dep't of Envtl. Res.,* 145 Pa.Cmwlth. 363, 603 A.2d 288 (1992), *aff'd,* 533 Pa. 319, 623 A.2d 321 (1993). Any doubt should be resolved against the moving party. *Id.*

5. 15 U.S.C. §§ 1610-1693r.

6. 12 C.F.R. §§ 226.1-226.36.

7. Sections 2(4)(ii), (iii), (v), (vii), (viii), (ix), (xi), (xviii) and (xxi) provide as follows:

> **"Unfair methods of competition"** and **"unfair or deceptive acts or practices"** means any one or more of the following:
> ....
> (ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;
> (iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;
> ....
> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;
> ....
> (vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;
> (viii) Disparaging the goods, services or business of another by false or misleading representation of fact;
> ....
> (ix) Advertising goods or services with intent not to sell them as advertised;
> ....
> (xi) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;
> ....
> (xviii) Using a contract, form or any other document related to a consumer transac-

The complaint seeks, *inter alia*, a declaration that all Defendants are in violation of the Law, the Truth in Lending Act and Regulation Z; an order directing all Defendants to make appropriate restitution to and/or repairs to the homes of the affected consumers; an order directing the reformation, reduction or modification of the mortgages of the affected consumers; an order directing all Defendants to pay damages under the Truth in Lending Act and Regulation Z; an order directing all Defendants pay to the Commonwealth civil fines; and an order enjoining all Defendants from acting in any manner in violation of the Law.

### The Complaint

Paragraphs 1 through 60 of the 982–paragraph complaint identify the parties to the action. With respect to the Objecting Defendants, they are identified as follows: ¶¶ 19 and 20 identify Lisa Marie Gibson d/b/a Lisa Marie's Appraisal Service operating in Cresco, Pennsylvania. Paragraphs 21 through 23 identify Gibson as the owner of Lisa Marie's Appraisal Service and allege that she acted in concert with remaining Defendants to deliberately inflate and overstate the value of land and homes sold to consumers. Paragraphs 31, 32, and 33 identify Stanley Cheslock as a resident of Stroudsburg, a licensed residential appraiser and an employee of NEPA. Paragraphs 34 and 35 identify Kathleen Spitzfaden as a resident of Stroudsburg and an employee or agent of NEPA. NEPA is identified in paragraph 36 as an appraisal service located in Stroudsburg. Paragraphs 38 through 40 allege that Cheslock and Spitzfaden acted in concert with remaining Defendants to

deliberately inflate or overstate their appraised values of land and homes sold to consumers, that they did so while employed by NEPA, and that NEPA had actual or constructive knowledge of their activities. Paragraph 42 identifies Centrella as a real estate appraiser residing in West Pittston, Pennsylvania. Paragraph 43 states that on one occasion, Centrella acted in concert with remaining Defendants to deliberately inflate or overstate the value of land and a home sold to a consumer.

Count I of the complaint, ¶¶ 61–511, alleges that all Defendants violated the Law by engaging in abusive, deceptive and confusing sales, lending and appraisal practices. Count I sets forth the names of consumers who entered into land sale and construction contracts with remaining Defendants. Consumers were provided with estimated mortgage payments by remaining Defendants, and made down payments on their respective purchases. Objecting Defendants are alleged to have performed appraisals at the request of remaining Defendants.

The complaint further alleges that during the closings for the consumers' respective purchases, (1) the HUD–1 settlement statements included closing costs far in excess of what consumers had originally been told, (2) the HUD statements listed the purchase prices at prices higher than originally agreed to by consumers, and (3) consumers were required to unknowingly execute additional mortgage contracts, in some instances to cover the increased closing cost, which were not disclosed on the HUD statements. Consumers were also required in some instances to execute con-

tion which contains a confessed judgment clause that waives the consumer's right to assert a legal defense to an action;

. . . .

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding. 73 P.S. §§ 201–2(4)(ii), (iii), (v), (vii), (viii), (ix), (xi), (xviii) and (xxi).

fession of judgment clauses as part of their home construction purchases. Count I further alleges that some consumers were not properly credited with the total amount of their down payments during the closing proceedings, that remaining Defendants would secure mortgages from unsuspecting third-party lenders for the maximum amount that the lenders would provide, and that remaining Defendants discouraged consumers from hiring independent legal counsel. As a result of remaining Defendants' actions, consumers were unable to meet the greater financial burdens placed on them and sustained damages by either "short selling" their homes or declaring bankruptcy.

Paragraphs 512–795 of Count II allege that all Defendants violated the Law by inflating and overstating the values of homes and properties. Specifically, the Commonwealth alleges that remaining Defendants would (1) advertise home and land purchase prices and mortgage rates, (2) raise the sale price during negotiations, (3) work with appraisers who agreed to agreed to inflate or artificially maximize the value of the collateral, (4) develop a final sales price close or identical to the "appraised value," (5) broker loans to unsuspecting third-party lenders to whom the values appeared to be reasonable and sufficiently collateralized, (6) ignore the consumers' inability to meet the financial obligations and falsify the settlement statements to mislead lenders and consumers, (7) mislead consumers regarding the projected tax obligations, (8) collect sizeable down payments for consumers, (9) collect the mortgage proceeds from the lenders,

and (10) walk away from the transaction with actual or constructive knowledge that consumers were not financially able to make their mortgage payments.

With regard to Gibson and Cheslock, the complaint alleges that remaining Defendants routinely provided them with documentation containing the land value component of the sale, including blueprints, contracts and specifications. Gibson and Cheslock would then blindly incorporate the documentation into their appraisals. It is further alleged that in some instances, Gibson and Cheslock provided appraisals for property that they did not physically inspect.

Counts III through VIII are not directed to Objecting Defendants.[8] Gibson, Cheslock, Spitzfaden, and NEPA have filed demurrers to Counts III through VIII inasmuch as these Counts do not allege any wrongdoing on their part. Centrella has filed preliminary objections demurring to Counts III, IV, and V on the same basis. The Commonwealth has stipulated that these Counts are not directed to Objecting Defendants. Accordingly, Counts III through VIII are dismissed as against Gibson, Cheslock, Spitzfaden, and NEPA. With regard to Centrella, however, since she has only demurred to Counts III, IV, and V, we may only dismiss those Counts against her. *See Clay v. Advanced Computer Applications, Inc.*, 370 Pa.Super. 497, 536 A.2d 1375 (1988), *rev'd in part*, 522 Pa. 86, 559 A.2d 917 (1989)(court cannot sustain demurrer in favor of party that has not demurred).

---

8. Count III alleges a violation of the Law with regard to discouraging and disparaging consumer use of independent legal counsel. Count IV alleges a violation of the Law with regard to representation to consumers about the magnitude of property tax increases. Count V alleges that remaining Defendants failed to perform in a workmanlike manner. Count VI alleges violations of the Truth in Lending Act and Regulation Z. Count VII alleges violations of the Law with regard to bait and switch. Count VIII alleges a violation of the Law with regard to use of a confession of judgment clause.

*General Demurrer to Counts I and II
filed by Objecting Defendants*

### Count I

Centrella demurrers to Count I on the ground that there are no allegations of illegal activity on her part. Centrella is identified in ¶¶ 42 and 43 as a licensed real estate appraiser who on at least one occasion acted in concert with remaining Defendants to deliberately inflate or overstate the value of the land and a house sold to a consumer.

■ We agree that Count I should be dismissed against Centrella. Our thorough review of Count I confirms that not one of the appraisals complained of were performed by Centrella. Although the Commonwealth argues that Centrella was a critical party to the remaining Defendants' scheme and that Count I serves to establish how all Defendants interacted with one another, we cannot ignore the simple fact that the Commonwealth has not alleged any illegal activity on Centrella's part in Count I. In order to be held accountable for the accusations contained in Count I, it must be alleged that Centrella participated in those actions.

■ The Rules of Civil Procedure allow a plaintiff to file more than one cause of action against the same defendant. Pa. R.C.P No. 1020. Each claim, however, must be presented in a self-sufficient separate count, which includes averments of facts pertaining to the particular claim and relief sought. *Id. See generally General State Auth. v. Lawrie and Green*, 24 Pa. Cmwlth. 407, 356 A.2d 851 (1976); *Allentown Ahead Fund, Inc. v. Kraynick*, 65 Pa. D. & C.2d 611 (1974).

Thus, contrary to the Commonwealth's assertions, the averments in Count II do not suffice to maintain a cause of action against Centrella in Count I. To require Centrella to answer the allegations of Count I, which does not allege any wrongdoing on her part, severely prejudices her ability to defend the action. Accordingly, Count I is hereby dismissed against Centrella.

### Count II

■ Objecting Defendants demurrer to Count II on the ground that the Commonwealth has failed to sufficiently allege facts in support of its assertion that they colluded or conspired with remaining Defendants to deprive consumers of a protected right. In other words, the Commonwealth has failed to sufficiently plead a cause of action for fraud. In response, the Commonwealth acknowledges that it has not alleged that Objecting Defendants engaged in a conspiracy with remaining Defendants. Rather, the Commonwealth asserts that they acted in concert and colluded with remaining Defendants.

■ As we noted in *Commonwealth v. Percudani*, 825 A.2d 743 (Pa.Cmwlth.2003)(*Percudani I*) and *Commonwealth v. Percudani*, 844 A.2d 35 (Pa. Cmwlth.2004), *as amended*, 851 A.2d 987 (Pa.Cmwlth.2004) (*Percudani II*), the Law is to be liberally construed to effectuate the legislative goal of consumer protection. To that end, the Commonwealth has averred that Objecting Defendants acted in concert and/or colluded with remaining Defendants to inflate the value of the land and homes purchased by consumers in an effort to maximize their profits. The term "collusion" is defined as "[a]n agreement to defraud another or to do or obtain something forbidden by law." Black's Law Dictionary 281 (8th Ed.2004).

In ¶¶ 514–522, the Commonwealth avers that remaining Defendants would routinely engage appraisers to perform appraisals for their land and home contracts. The complaint further alleges that remaining

Defendants would routinely provide Gibson and Cheslock with documentation regarding the land and home values, which were then blindly incorporated into the appraisals. These actions were done to inflate the value of the homes and to mislead the consumers as to the true market value of their homes. Specifically, ¶ 522 outlines the Commonwealth's theory of collusion among all Defendants.

With regard to Spitzfaden, she is identified in ¶ 518 as acting in concert with remaining Defendants to inflate the values of homes, overstate their values, and engage in unfair trade practices. In Count II, only ¶¶ 576–584 make a claim against Spitzfaden wherein the Commonwealth alleges that Defendant P & K Developers arranged for an appraisal to be performed by Spitzfaden and NEPA on behalf of Gaines Hearns. Under the supervision of Spitzfaden, NEPA agent Kevin Kennedy performed an appraisal of the Hearns' home which was inflated in value over $49,000. The allegations in ¶¶ 576–584 refer to the Hearns' appraisal performed by "Kennedy/Spitzfaden." Paragraph 579 further alleges that collusion existed between Defendant P & K Developers and Spitzfaden to coordinate the sale price and appraised value in order to mislead Hearns and any potential lender.

With regard to Centrella, ¶¶ 610 through 618 claim that Charmaine Cooper entered a land/home sales agreement with Defendants Eagle Valley, Steve Parisi, and Donald Kishbaugh in the amount of $195,000. It is further alleged that Centrella performed an appraisal of the property and valued the home at $197,000. The home was later appraised at $146,000; the $51,000 difference in values is alleged to be the result of inflated value scheme of all Defendants.

The allegations against Centrella do not allege that she performed an inflated or overstated appraisal. Thus, the only allegation is that Centrella performed an appraisal, which in and of itself, is not an illegal activity. However, ¶ 613 alleges that Centrella acted in concert with Defendants Eagle Valley Homes, Parisi, Kishbaugh, Purdue, and Nations 1st Bank to ensure that the appraised value and sale price were relatively close in range in an effort to mislead Ms. Cooper regarding the value of her home.

A complaint must apprise the defendant of the nature and extent of the claim so that the defendant has notice of what the plaintiff intends to prove at trial and may prepare to meet such proof with his own evidence. *Saint Thomas Tp. Bd. of Supervisors v. Wycko*, 758 A.2d 755 (Pa.Cmwlth.2000). In *Percudani I*, we recognized the divergent views of the Pennsylvania Superior Court and the Bankruptcy Court for the Eastern District of Pennsylvania regarding the pleading requirements of fraud under the Law. Based on the 1996 amendments to the Law, we concluded that the General Assembly's use of the term "other deceptive conduct" in addition to the term "fraudulent conduct" no longer required a plaintiff to plead the elements of common law fraud. To hold otherwise would have rendered the General Assembly's amendments redundant and superfluous, which is contrary to the rules of statutory construction. *Commonwealth ex. rel. Pandolfo v. Pavia Co.*, 381 Pa. 488, 491, 113 A.2d 224 (1955)(where the language of a later statute differs from that of an earlier statute regarding the same subject matter, the later statute is to be construed differently).

Our review of the Commonwealth's complaint establishes that the Commonwealth has detailed Objecting Defendants' alleged illegal conduct and the manner in which it contributed to or was a part of remaining Defendants overall scheme. We therefore

conclude that Count II is sufficiently pleaded in order to maintain a cause of action against Objecting Defendants and to allow them to prepare a defense thereto. *See City of Philadelphia v. Kane*, 63 Pa. Cmwlth. 643, 438 A.2d 1051 (1982)(court has wide discretion in determining whether particular averments are conclusions of law or averments of fact). Additionally, in view of the allegations that Kennedy performed the Hearns' appraisal under the supervision of Spitzfaden and that she acted in concert with Defendant P & K Developers to inflate the value of homes for appraisal purposes, we conclude that the Commonwealth's allegations are sufficiently pleaded to maintain a cause of action against Spitzfaden in Count II of the complaint. *Wycko.*

■ Furthermore, we agree that the Commonwealth has failed to allege a cause of action under Section 2(4)(v) of the Law (relating to false advertising) in Counts I and II against Gibson, Cheslock, Spitzfaden and NEPA. Therefore, those actions are dismissed. *Percudani I* (to maintain a cause of action under Section 2(4)(v) of the Law, the plaintiff must establish that a defendant's advertisement is false, that it actually deceives a substantial segment of its audience and that the false advertisement is likely to make a difference in the purchasing decision).

*Preliminary objections of Lisa Marie Gibson, individual and d/b/a Lisa's Appraisal Services*

### Count I

In her first objection, Gibson requests that we dismiss those allegations that do not involve any activity on her part. The Commonwealth has stipulated that Gibson is not required to answer those allegations.

We have identified the following paragraphs in Count I to which Gibson must respond: ¶¶ 61–62,[9] 98–126 (Ms. Natalie Wilson);[10] 149–166 (Ms. Sarah Pasley); 167–178 (Ms. Renee McIver–Cole); 215–223 (Ms. Wanda Padilla); 224–238 (Mr./Mrs. Carlos Jorge); 294–311(Mr./Mrs. Almus Wilson); 329–351 (Mr./Mrs. Joseph Whetsell); 408–433 (Ms. Yvette Cuff); 451–466 (Ms. Gwendolyn Maxwell); 475–505; 509; and 511.

In her second preliminary objection directed to Count I, Gibson requests that Count I be dismissed against her with respect to consumers Ms. Padilla, Mr./Mrs. Jorge, Mr./Mrs. Almus Wilson, Mr./Mrs. Whetsell, and Ms. Maxwell because there are no allegations that the appraisals provided by Gibson were inflated or misrepresented.

■ With regard to Ms. Padilla, ¶ 222 alleges that the appraisal was defective inasmuch as the home which Gibson appraised had not been built at the time of the appraisal. Therefore, we conclude that the allegations against Gibson pertaining to Ms. Padilla are legally sufficient to maintain the cause of action. With regard to consumers Mr./Mrs. Jorge, Mr./Mrs. Almus Wilson, Mr./Mrs. Whetsell and Ms. Maxwell, we agree that the Commonwealth has failed to allege the manner in which Gibson's appraisals were allegedly false or in what manner the appraisals misled the consumers. Therefore, we will provide the Commonwealth an opportunity

---

9. Although some of the identified paragraphs to which Objecting Defendants must respond do not allege activity on their part, we believe that they must answer all allegations regarding the particular consumer affected by remaining Defendants' alleged activities.

10. There are several consumers with the last name Wilson. For clarity, we will use the full name.

to amend its pleadings with regard to these allegations against Gibson.

### Count II

In her second preliminary objection to Count II, Gibson once again asserts that she should only answer for those consumer transactions in which she performed the appraisals. We agree and identify the following paragraphs of Count II that Gibson must answer: 512–513; 515–522; 539–552 (Mr./Mrs. Almus Wilson); 619–627 (Mr./Mrs.Williams); 628–637 (relating to Department of Banking report, Exhibit 209); 638–647 (Mr./Mrs.Cadiz); 656–662 (Ms. Natalie Wilson); 682–688 (Ms. Pasley); 756–762 (Ms. Maxwell); 778–785; 789; and 795.

Additionally, Gibson complains that the appraisal for Mr./Mrs. Cadiz varied from the "alleged true value" as determined by the Commonwealth by only $6,000. Therefore, she submits that the allegations against her involving the Cadizes should be dismissed. We disagree. Such a determination is beyond the purview of preliminary objections insofar as it would be a determination on the merits of the Commonwealth's action i.e., whether Gibson's appraisal was in fact inflated or overstated.

Finally, Gibson contends that the Commonwealth has failed to state a claim under Section 2(4)(iii) of the Law (relating to causing the likelihood of confusion or of misunderstanding as to the affiliation, connection or association with, or certification by, another). We agree. The Commonwealth has failed to set forth any allegations that Gibson held herself out to be affiliated, connected or associated with, or that she was certified by, another entity. The identification of Gibson in ¶¶ 21–23 does not indicate that that she has any professional associations that would cause confusion to the consumer. Accordingly, those claims in Counts I and II arising under Section 2(4)(iii) are dismissed.

### Preliminary objections of Stanley Cheslock

### Count I

In his first preliminary objection to Count I, Cheslock likewise complains that he should not be required to address those allegations regarding consumers for which it is not alleged that he performed the appraisals. We agree, and we have identified the following paragraphs of Count I Cheslock must answer: 61–62; 239–261 (Mr./Mrs. Calvin Harris); 262–274 (Mr. Marco Yagual); 275–293 (Mr./Mrs. Frederick Fludd); 312–328 (Mr. Klebher Vicuna), 377–389; (Ms. Joanne Valle); 475–505 and 510–511.

In his second preliminary objection, Cheslock asks that we dismiss or require the Commonwealth to amend Count I as it relates to appraisals performed for Mr. Yagual (¶¶ 262–274) and Mr. Vicuna (¶¶ 312–328) because the Commonwealth has failed to allege that the values established by Cheslock's appraisals were inflated or misrepresented. The Commonwealth's allegations merely provide that Cheslock's appraisals were "critical to these transactions." Thus, there are no allegations regarding the manner in which Cheslock's appraisals mislead consumers or were inflated or overvalued. We therefore will grant the Commonwealth an opportunity to amend its allegations against Cheslock with regard to the appraisals performed for Mr. Yagual and Mr. Vicuna.

### Count II

In his second objection to Count II, Cheslock complains that he should not answer those allegations of illegal activity that do not pertain to him. We agree and

we have identified the following paragraphs to which Cheslock must respond: 513–516; 519–529 (Cynthia Gaines); 530–538 (Mr./Mrs. Calvin Harris); 565–573 (Mr./Mrs. Enrique Douglas); 585–593 (Mr./Mrs. David Alvarez); 594–602 (Joanne Valle); 663–669; 695–701 (Mr./Mrs.Fludd); 778–785; 790; and 795.

■ Finally, Cheslock asks the Court to dismiss Counts I and II as to those causes of action arising under Section 2(4)(iii) of the Law. Unlike the identification of Gibson, the Commonwealth has alleged that Cheslock is licensed by the Certified Real Estate Appraisers Board (*see* ¶ 32). Because the Commonwealth has alleged that Cheslock is certified by that Board, we believe that the allegations are sufficient to support an allegation, at this time, that Cheslock's certification may have misled consumers as to his competency and truthfulness.

### Preliminary Objections of Kathleen Spitzfaden and NEPA

Paragraphs 34–41 of complaint identify Spitzfaden (¶¶ 34–35) and NEPA (¶ 36–37). Paragraph 36 identifies Wilkins & Associates as owners of NEPA. Wilkins, however, has been dismissed from the lawsuit inasmuch as Spitzfaden is the current owner of NEPA. *See Parisi I.* The Commonwealth has not amended its complaint to allege that Spitzfaden is the owner or "alter ego" of NEPA.[11] With this in mind, we now address the specific preliminary objections filed by Spitzfaden and NEPA.

### Count I

■ Spitzfaden complains that Count I does not allege any activity on her part, and therefore, Count I should be dismissed against her. Count I does not allege any activity on Spitzfaden's part *individually*.[12] However, Count I does allege activity on the part of NEPA. If in fact Spitzfaden is the owner or alter ego of NEPA, she may be held liable for Cheslock's actions on a master-servant theory or, if NEPA is a corporation (NEPA is not identified as such in the complaint), as an officer or employee thereof. Accordingly, we will grant the Commonwealth an opportunity to allege sufficient facts pertaining to Spitzfaden's ownership interest in NEPA and any actions for which she may be liable as an officer, employee, owner or alter ego of NEPA.

### Count II

■ In their final preliminary objection to Counts I and II, Spitzfaden and NEPA allege that the Commonwealth has not sufficiently pleaded a cause of action under Section 2(4)(iii) against them. Reviewing those paragraphs identifying Spitzfaden and NEPA, we must agree. The Commonwealth has not set forth that Spitzfaden and/or NEPA have an affiliation, connection, sponsorship or certification by another entity which may cause confusion to the consumer. Therefore, we dismiss any cause of action in Counts I and

---

11. In its brief in opposition to Spitzfaden's preliminary objections, the Commonwealth asserts that at this juncture, it is not seeking to "pierce the corporate veil," but that it should not be prevented from developing discovery on this theory. It further suggests that proceeding against NEPA's corporate structure should be avoided. (Brief in Opposition to Preliminary Objections of Kathleen Spitzfaden, p. 9) In response, we again note that the Commonwealth has failed to allege that Spitz-

faden is anything other than an employee of NEPA. *See* ¶¶ 34–37. If the Commonwealth is alleging that Spitzfaden is really the "alter ego" of NEPA, then such allegations must be pleaded before Spitzfaden may be held accountable for NEPA's alleged illegal activity.

12. Count I does not allege that Spitzfaden performed any of the appraisals at issue.

II arising under alleged violations of Section 2(4)(iii) of the Law.[13]

In view of the foregoing, we enter the following order:[14],[15]

### ORDER

AND NOW, this 5th day of April, 2005, it is hereby ordered as follows: the preliminary objections of Defendants Lisa Marie Gibson, d/b/a Lisa Marie's Appraisal Services; Stanley Cheslock; Kathleen Spitzfaden; and NEPA Appraisal Services to Counts III–VIII of the complaint are SUSTAINED. Counts III–VIII are hereby dismissed as against those Objecting Defendants; Counts I, III, IV and V are dismissed as against Jenny Centrella. Those causes of action arising under Section 2(4)(iii) of the Unfair Trade Practices and Consumer Protection Law (Law) found in Counts I and II of the complaint are hereby dismissed as against Gibson, Spitzfaden and NEPA. Those causes of action arising under Section 2(4)(v) of the Law found in Counts I and II of the complaint are hereby dismissed as against Gibson, Cheslock, Spitzfaden and NEPA.

Objecting Defendants Gibson and Cheslock shall be required to answer those allegations set forth in ¶¶ 1–60 of the complaint and those allegations in Counts I

and II previously identified in the foregoing opinion.

The Commonwealth is hereby directed to file an amended pleading with regard to the following: allegations involving consumers Mr./Mrs Jorge, Mr./Mrs. Almus Wilson, Mr./Mrs. Whetsell and Ms. Maxwell; Mr. Yagual, and Mr. Vicuna; and allegations regarding the ownership interest of Spitzfaden in NEPA.

Objecting Defendants' remaining preliminary objections are hereby OVERRULED.

13. Centrella's preliminary objections have been addressed throughout our discussion of the general preliminary objections. Therefore, we will not discuss them separately.

14. We have addressed only those preliminary objections raised by the parties in their pleadings and not those raised by way of brief. The Pennsylvania Rules of Civil Procedure provide that the only pleadings allowed are a complaint, an answer thereto, a reply to the answer if it contains new matter or a counterclaim, a counter-reply to any counterclaim, preliminary objections and an answer thereto. Pa. R.C.P. No. 1017. Therefore, any objections raised by way of brief were not properly

before the Court and are deemed waived. *See Barbet v. Edelstein*, 346 Pa.Super. 488, 499 A.2d 1106 (1985)(party waived procedural impropriety of an affirmative defense raised in a preliminary objection in nature of demurrer by failing to object).

15. On March 8, 2005, Defendants Parisi and P & K Developers filed an answer to the Commonwealth's complaint. To the extent that our order herein requires the Commonwealth to amend its complaint, Defendants Parisi and P & K Developers are hereby granted leave to amend their answer within twenty days of service of the Commonwealth's amended complaint.