IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Borough of Chapman             :
                                      :
          v.                  :    No. 810 C.D. 2021
                                        :    Submitted: July 29, 2022
George Charles, Jr.,          :
                 Appellant    :

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                       FILED: October 19, 2022

George Charles, Jr., individually, and as the Executor of the Estate of Celia K. Charles, deceased (Charles), appeals *pro se* from the order dated August 13, 2020, and entered August 14, 2020, in the Court of Common Pleas of Northampton County (trial court), which granted a permanent injunction and directed Charles to abate the nuisance on his property (Property). Charles now argues that he established a preexisting nonconforming use of the Property, and that the trial court's order violated his constitutional rights based on this nonconforming use. After careful review, we affirm.

## I. Background and Procedural History

This case began when the Borough of Chapman (Borough) filed a complaint against Charles on September 19, 2019. The Borough averred that the Property is a

26.5-acre parcel of land, which formerly belonged to Charles' parents, George, Sr., and Celia. When George, Sr., died in 1984, the Property passed to Celia. When Celia died in 2009, the Property passed to her estate. Charles had been the executor of Celia's estate since 2010. The Borough further averred that it received complaints regarding the Property and conducted an inspection, which revealed that the Property contained "three . . . motor homes without running water or sanitary sewage facilities being occupied by individuals . . . ." Original Record (O.R.), Item No. 1, Complaint 9/19/19, ¶ 8. In addition, the Property contained dilapidated structures, as well as "large quantities of junk, construction debris, insulation, wire, tires, sheets of rusted corrugated metal, piles of wood, and a variety of other . . . debris . . . ." *Id.* ¶ 4, 9. The structures and other items were reportedly home to animals, such as groundhogs, rats, and racoons.

Based on these allegations, the Borough argued the Property had become a common law public nuisance and violated Borough ordinances relating to nuisances and dangerous structures. The Borough cited Ordinance Nos. 1996-1, 1999-2, 1999-5, and 1999-6, which prohibit, in relevant part, maintaining property infested with or conducive to rodents, insects, or other pests; maintaining dangerous structures; maintaining motor vehicles in a state of disrepair or neglect; and amassing garbage, junk, or other materials.[1] The Borough asked that the trial court issue an injunction directing Charles to abate the alleged nuisance or else permit the Borough to abate the nuisance itself and collect the cost of doing so from Charles.

The matter proceeded to a non-jury trial on August 11, 2020, at which Charles appeared *pro se*. At the outset, the trial court granted the Borough's request to deem

---

[1] *See* Borough of Chapman, Pa., Ordinance 1996-1 (June 3, 1996); Borough of Chapman, Pa., Ordinance 1999-2 (Dec. 3, 1999); Borough of Chapman, Pa., Ordinance 1999-5 (Dec. 3, 1999); Borough of Chapman, Pa., Ordinance 1999-6 (Dec. 3, 1999).

admitted all averments in its complaint because Charles had not filed any responsive pleading. Supplemental Record (S.R.), Notes of Testimony (N.T.), 8/11/20, at 8-12;[2] *see* Pa.R.Civ.P. 1029(b) ("Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication. A general denial or a demand for proof, except as provided by subdivisions (c) and (e) of this rule, shall have the effect of an admission."). Charles himself agreed the facts in the complaint were "essentially correct . . . ." S.R., N.T., 8/11/20, at 12.

The Borough then presented the testimony of John Defassio (Defassio), the Borough Secretary. Defassio testified regarding the ordinances Charles allegedly violated and the Borough's efforts to encourage Charles to clean up the Property. Defassio testified that the Borough filed cases against Charles in 1991 and 2012, and that Charles complied "in part" with the resulting court orders and agreements. *Id.* at 17-18. Nonetheless, the Borough became involved with Charles again in 2019, because "[a]dditional junk was being hauled in and stored. Some of it was being burned there, and we were receiving complaints from the neighbors of the odor of certain things burning . . . ." *Id.* at 18.

Defassio further testified that the Borough conducted a series of inspections of the Property. This included an initial inspection, which led the Borough to file its complaint, and an inspection in January 2020.[3] *Id.* at 18-23. Finally, the Borough conducted an inspection on August 7, 2020, just before the trial on August 11, 2020. *Id.* at 24-25. This inspection revealed that the Property "in general, was cleaned up

---

[2] Charles filed a request for transcript at the same time as his appeal, but this Court did not receive the transcript until the filing of a supplemental record on July 15, 2022.

[3] Defassio noted that Charles was present and gave his consent for the inspection in January 2020. S.R., N.T., 8/11/20, at 20.

dramatically from what we had seen back in January . . . ." *Id.* at 25. Nonetheless, Defassio testified he observed what appeared to be burned mattresses "and piles of springs that were left from those mattresses," as well as tires, construction debris, and a motor home. *Id.* at 25-32. He maintained there were still "a lot of things that will harbor vermin and rodents and will provide a breeding ground for mosquitos." *Id.* at 25.

Significantly, Defassio discussed a man named Elmer Kennedy (Kennedy), who took up residence on the Property at one point and was using it to "conduct[] some sort of salvage operation where he would bring items in, burn off the outside and salvage the metals and sell them for scrap." *Id.* at 20-23. The Borough assisted Charles in bringing an eviction action against Kennedy and obtaining an eviction order. *Id.* at 23-24. Defassio testified Kennedy was evicted from the Property "about a week ago, maybe two weeks ago." *Id.* at 24. Since that time, however, Borough officials had once again seen Kennedy "hauling trailer loads of junk into and out of" the Property. *Id.* Indeed, Kennedy was present during the inspection on August 7, 2020. *Id.* at 25. Defassio testified Kennedy "was loading up some debris into his trailer and hauled off his trailer and the log splitter that had been there." *Id.*

Charles cross-examined Defassio and then testified on his own behalf, with an examination by the trial court. Charles asserted that his father, George, Sr., began operating a scrapyard on the Property in 1966, and that he was continuing his father's business. *Id.* at 34-38, 53-55. Thus, Charles asserted his use of the Property preexisted the Borough ordinances and was "grandfathered."[4] *Id.* at 34-38, 53.

---

[4] Charles raised the issue of a separate Borough ordinance governing scrapyards during his cross-examination of Defassio. S.R., N.T., 8/11/20, at 34-44; *see* Borough of Chapman, Pa., Ordinance 118 (July 9, 1990). Defassio testified on redirect that Charles was noncompliant with the ordinance because he did not obtain a license to operate a scrapyard, among other things. S.R., N.T., 8/11/20, at 48-52.

Charles further maintained, however, that the condition of the Property was largely not his fault. Charles explained he was "out in Milwaukee" from August 2017 to February 2019 and allowed Kennedy to use the Property to split and store wood, but Kennedy instead began hauling debris to the Property. *Id.* at 57, 61-62. Ultimately, Charles agreed the Property "has to be cleaned up . . . ." *Id.* at 44-47, 54, 57-61, 66. He merely appeared to blame the situation on Kennedy and question the amount of cleaning that was necessary. *See id.* at 54, 66 ("I want to clean that up but not to the extent that they're having a problem with it.").

The trial court issued a decision and order, dated August 13, 2020, and entered August 14, 2020, granting a permanent injunction in favor of the Borough. The trial court made findings of fact, which largely tracked the averments in the Borough's complaint, and concluded Charles' maintenance of the Property was a common law public nuisance and a nuisance in violation of the Borough ordinances listed above. The trial court's order directed Charles to abate the nuisance by removing all debris, structures, motor homes, or other items located on a select portion of the Property[5] in violation of the Borough's ordinances. The order further directed that, if Charles did not abate the nuisance within 60 days, the Borough was permitted to abate the nuisance and collect the costs from Charles personally or by municipal lien.

Charles timely appealed[6] and essentially raises two arguments for our review. Charles argues (1) he and his father used the Property as a scrapyard before passage

---

[5] Per a discussion with the parties at the conclusion of trial, the trial court limited its order to the "offensive conditions of the [P]roperty that cover[] approximately the 5-6 acres situated at the 'top' part of the 26.5 acres." O.R., Item No. 5, Order of Court, 8/13/20, at 2 n.1.

[6] Charles mistakenly filed his appeal in the Pennsylvania Superior Court. The Superior Court then transferred the appeal to this Court on June 16, 2021. *See* 42 Pa.C.S. § 762(a)(4)(i)(B) (providing that the Commonwealth Court shall have exclusive jurisdiction over appeals from final orders of **(Footnote continued on next page…)**

of the relevant Borough ordinances, so that his use of the Property is a preexisting nonconforming use immune from those ordinances, and (2) applying the Borough's ordinances retroactively to prohibit this nonconforming use would be a violation of his constitutional rights. Charles' Br. at ii, 10-14.

## II. Discussion

Initially, Charles does not support the arguments in his brief with citations to relevant legal authority or the record. Charles concedes that he "do[es] not have any citations" but apologizes and explains that he "do[es] not intend to waive anything . . . ." *Id.* at ii. Charles avers he is suffering from health problems, which have limited his ability to draft a brief, and proposes the legal doctrines on which he relies, preexisting nonconforming use and unconstitutionality, are familiar to this Court. *Id.*

Our Rules of Appellate Procedure direct an appellant to divide the argument section of his or her brief "into as many parts as there are questions to be argued" and to "have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). If an appellant fails to buttress his or her claims with "developed argument or citation to supporting authorities and the record," those claims are waived. *Robinson v. Fye*, 192 A.3d 1225, 1231 n.8 (Pa. Cmwlth. 2018) (quoting *Commonwealth v. Perez*, 93 A.3d 829, 838 (Pa. 2014)).

---

courts of common pleas "where is drawn in question the application, interpretation or enforcement of any . . . local ordinance or resolution . . . ."); 42 Pa.C.S. § 5103(a) (if an appeal is filed in a court of the Commonwealth that lacks jurisdiction, the court should not quash the appeal "but shall transfer the record thereof to the proper tribunal of this Commonwealth, where the appeal . . . shall be treated as if originally filed in the transferee tribunal on the date when the appeal . . . was first filed" in the court without jurisdiction).

Our courts have often explained that *pro se* litigants are entitled to no special privileges. While we will construe *pro se* filings liberally, "rules pertaining to the form and content of appellate briefs are mandatory" and "apply to lawyers and non-lawyers alike." *Richardson v. Pa. Ins. Dep't*, 54 A.3d 420, 425 (Pa. Cmwlth. 2012) (citations omitted). Moreover, "any layperson choosing to represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing." *Arena Beverage Corp. v. Pa. Liquor Control Bd.*, 97 A.3d 444, 452 (Pa. Cmwlth. 2014) (quoting *Vann v. Unemployment Comp. Bd. of Rev.*, 494 A.2d 1081, 1086 (Pa. 1985)). Here, because Charles failed to develop his arguments with citation to relevant legal authority and the record, he has waived those arguments.

Mindful of Charles' *pro se* status, we nonetheless offer a brief explanation of why, even if he had not waived his arguments, they would be meritless. We review the grant or denial of a permanent injunction to determine whether the trial court committed an error or law. *K.H. v. Pa. Interscholastic Athletic Ass'n*, 277 A.3d 638, 645 n.6 (Pa. Cmwlth. 2022) (quoting *Buffalo Twp. v. Jones*, 813 A.2d 659, 663-64 (Pa. 2002)). As noted above, Charles argues his use of the Property as a scrapyard is protected as a preexisting nonconforming use.

A "nonconforming use" is, in pertinent part, "a use, whether of land or of structure, which does not comply with the applicable . . . zoning ordinance . . . where such use was lawfully in existence prior to the enactment of such ordinance . . . ." Section 107(a) of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10107(a). The nonconforming use doctrine has constitutional significance, as, "[w]hen a lawful nonconforming use exists, 'the right to continue such use is afforded the constitutional protections of due process.'"

*PAJ Ventures, LP v. Zoning Hearing Bd. of Moore Twp*., 225 A.3d 891, 898 (Pa. Cmwlth. 2020) (quoting *DoMiJo, LLC v. McLain*, 41 A.3d 967, 972 (Pa. Cmwlth. 2020)).

The nonconforming use doctrine is not without limitations, however. Our law instructs that a preexisting nonconforming use "cannot be abrogated or destroyed **unless it is a nuisance**, it is abandoned[,] or it is extinguished by eminent domain." *Money v. Zoning Hearing Bd. of Haverford Twp.*, 755 A.2d 732, 736 (Pa. Cmwlth. 2000) (quoting *Keystone Outdoor Advert. v. Dep't of Transp.*, 687 A.2d 47, 51 (Pa. Cmwlth. 1996) (emphasis added). Conditions associated with a nonconforming use also remain subject to reasonable regulation. *Hunterstown Ruritan Club v. Straban Twp. Zoning Hearing Bd.*, 143 A.3d 538, 546 (Pa. Cmwlth. 2016) (quoting *Baer v. Zoning Hearing Bd. of Quincy Twp*., 782 A.2d 597, 601 (Pa. Cmwlth. 2001)). In this respect, the Court has distinguished between zoning ordinances, which regulate tracts of land in a municipality, and "junkyard and similar ordinances," which focus on "the health, safety and welfare of the general public." *Saint Thomas Twp. Bd. of Supervisors v. Wycko*, 758 A.2d 755, 758 (Pa. Cmwlth. 2000), *disapproval on other grounds recognized by Wheeler v. Workers' Comp. Appeal Bd. (Reading Hosp. & Med. Ctr.)*, 829 A.2d 730, 733 n.2 (Pa. Cmwlth. 2003).

Applying the foregoing principles to the facts of this matter, Charles' reliance on the nonconforming use doctrine is misplaced. Charles agreed during trial that the Property needed to be "cleaned up" but generally blamed its condition on Kennedy, rather than an allegedly preexisting scrapyard business. *See* S.R., N.T., 8/11/20, at 54 ("Now, I would agree with you that a lot of the debris here has to be cleaned up, and [Kennedy] put it there."). Thus, although Charles claims the nonconforming use doctrine immunizes him from the Borough's ordinances, the debris in dispute does

not result from that nonconforming use. Even acknowledging Charles' testimony that some debris predated Kennedy's arrival, *see, e.g., id.* at 54-55, or accepting for the sake of argument that the debris Kennedy brought onto the Property falls within Charles' nonconforming use, this argument would still fail. The nonconforming use doctrine does not permit Charles to perpetuate a nuisance, nor does it permit him to violate reasonable Borough ordinances regulating conditions of the Property in the interest of public health, safety, and welfare.

### III. Conclusion

In sum, Charles waived his arguments by failing to develop them in his brief. If Charles had not waived his arguments, they would be meritless. We therefore affirm the trial court's order dated August 13, 2020, and entered August 14, 2020. *See In re K.L.S.*, 934 A.2d 1244, 1246 n.3 (Pa. 2007) ("When the appellant has failed to preserve issues for appeal, the issues are waived, and the lower court's order is more properly 'affirmed.'") (citations omitted).

 

 

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Borough of Chapman | : | |
| | : | |
| v. | : | No. 810 C.D. 2021 |
| | : | |
| George Charles, Jr., | : | |
| Appellant | : | |

# **O R D E R**

**AND NOW**, this 19th day of October 2022, the order of the Court of Common Pleas of Northampton County, dated August 13, 2020, and entered August 14, 2020, is hereby **AFFIRMED**.

_____

STACY WALLACE, Judge